### IDOM *et al. v.* WEEKS & RUSSELL.[*]

(En Banc.   April 7, 1924.)

[99 So. 761.   No. 23686.]

1. PARTNERSHIP. *Partnership and individual members liable for tort of partner committed within scope of partnership business.*

   If a tort be committed by one partner while engaged in a transaction within the scope of the partnership business, and such tort be committed in furtherance of the interest of the partnership, the partnership and the individual members thereof will be liable.

2. PARTNERSHIP. *Neither partnership nor members not committing tort liable when committed by partner outside scope of partnership business and not ratified.*

   Neither a partnership nor the members not committing the tort are liable for a tort committed by one partner in a transaction outside of the partnership business, unless the act which constituted the tort was authorized by the members of the partnership or subsequently ratified by them; the act itself having been done in their behalf and interest.

3. PARTNERSHIP. *Liability of partner shooting person mistaken for burglar, without knowledge or consent of other partner, held for jury; partner not liable for shooting person mistaken for burglar by other partner not within scope of business.*

   Where a partnership, consisting of two members of the firm, is engaged in the retail drug business, and, after business hours, when the store is closed, one partner, with companions, secretes himself in the store for the purpose of trying to apprehend burglars, and willfully or negligently shoots a person at the front door of the store whom he mistakes for a burglar, without the knowledge or consent of his partner, the liability of the partner doing the shooting is a question of fact for the jury. The shooting was not

135 Miss.—5.

done within the scope of the partnership business or in further-
ance of the interest of the partnership; therefore the other
partner is not liable.

ETHRIDGE, J., and SMITH, C. J., dissenting in part.

---

*Headnote 1.  Partnership, 30 Cyc, p. 823;  2.  Partnership, 30 Cyc,
pp. 524, 525;  3.  Partnership, 30 Cyc, pp. 524, 593.

APPEAL from circuit court of Choctaw county.

HON. THOMAS L. LAMB, Judge.

Suit by Mrs. Clara May Idom by next friend and an-
other against Weeks & Russell.  From a judgment for
defendants, plaintiffs appeal.  Affirmed as to Weeks, and
reversed and remanded as to Russell.

*W. G. Boyett, Harry M. Bryan* and *J. E. McCall,* for
appellants.

This suit was instituted in the circuit court by Mrs.
Clara May Idom and her infant daughter by next friend,
W. E. West, to recover damages for the death of their
husband and father.  Dr. J. D. Weeks and Knox Russell,
owning and operating a drug business in the town of
Ackerman under the trade and firm name of Weeks &
Russell were made defendants.  Plaintiffs alleged that de-
cedent who was a night operator on duty at the Illinois
Central Railroad Depot came to his death at the hands
of Knox Russell in the early morning of June 21, 1920.
Seeing a light flash off and on in the drug store of ap-
pellees and believing burglars were in the store Idom,
together with two companions left the depot about sev-
enty yards away, for the purpose of making an inves-
tigation.  While on the sidewalk in front of the store,
Idom and one of his companions were shot down with-
out warning by Knox Russell, one of the appellees, who
was concealed in the store.  One died instantly while
the other (Idom) lived a few hours.

Defendants moved for a peremptory instruction at the
conclusion of appellant's testimony.  The lower court

granted this peremptory instruction upon the theory that the act of one of the partners, Russell, could not render the other, Dr. Weeks, liable because not committed in furtherance of the partnership business and not expressly authorized by the said Weeks. Under the court's ruling, *both* partners, including Russell, who committed the act, were held not liable. Upon what theory the court granted the instruction as to *Russell* we are unable to determine. Surely, there was ample proof of willful and wanton disregard of the rights of appellants' decedent so far as Russell is concerned and this was sufficient upon which to make up the issue for the jury to pass upon.

The declaration charged that Russell "on behalf of the partnership J. D. Weeks and Knox Russell, defendants, and in furtherance of the said scheme to capture the said burglars, and to guard the said partnership property from further depredation and loss and to further promote the firm's business and to care for and preserve its property, the said Knox Russell, *in his own capacity* as a partner aforesaid, and in behalf of his co-partner and with his knowledge, consent, approval and approbation, concealed himself in the said store of the said partnership on the night of the said 20th of June, neavily armed with a gun or pistol," etc.

It is our contention that the "knowledge, consent, approval and approbation" of the defendant Weeks need not have been *express* but that it could be *implied* from the circumstances of the case; that the act of guarding the property of the partnership and preserving the *corpus* of the firm's business was *in the course of that business* and was for the purpose of preventing a loss of goods (assets) by theft or otherwise just as much as a prudent exercise of buying skill, or selling ability, prevented loss on accumulated profits.

On the question of liability of one partner for tortious acts of another we cite the following authorities: "A firm of butchers is liable to the owner of a dog which died from eating poisoned meat which one member of the firm

in furtherance of the partnership business negligently caused to be placed where dogs might be reasonably expected to get it.'' *Dudley v. Love,* 60 Mo. App. 420.

Partners are also liable for statements made by one in derogation of a competitor and in aid of their own business. *Mfg. Company* v. *Perkins,* 78 Mich. 1, 43 N. W. 1073.

A partnership is liable as such in an action for malicious prosecution when the same was instituted in furtherance of the partnership business. *Page* v. *Banking Company,* 111 Ga. 73, 51 L. R. A. 463.

Forgery by one partner for the firm benefit subjects his copartner to liability therefor. *Bank* v. *Gore,* 14 Mass. 75, 8 Am. Dec. 83.

It was held in *Stockwell* v. *United States,* 20 L. Ed. 491, that a firm was liable for penalty although but one partner was guilty of misconduct.

In England, *Hamlin* v. *Houston,* 1 K. B. 81, 51 Wkly. Rep. 99, a firm was held liable for the act of a partner who obtained information respecting the business of a competing firm by bribing one of its clerks. See, also, *Page* v. *Citizens Banking Company,* 51 L. R. A. 463, and note.

We contend that the question as to whether or not the act complained of in this case was within the scope of the partnership business as it is carried on, is a question for the jury and not a question of law for the court. 30 Cyc. 476; *Lee* v. *Guice,* 13 S. & M. 668; *Henry Mfg. Co.* v. *Perkins et al.,* 43 N. W. 1073.

Two Mississippi cases fully support our contention that in the case at bar the defendant Weeks was liable with Russell for the latter's act. *Robertson & Patterson* v. *Goings,* 63 Miss. 500; *Heirn* v. *McCaughan,* 32 Miss. 18. See, also, Cooley on Torts, section 40; Gilmore on Partnership, 237-238; *New Orleans, etc., Ry. Co.* v. *Albritton,* 38 Miss. 277; *Barmore* v. *Railroad Co.,* 85 Miss. 426 and 87 Miss. 273. The last two cases are cited because of the

fact that, as stated above, the general principles of agency are applied to determine partnership.

Certain it is that a duty to protect firm property is involved in the very conception of a partnership whose business it is to sell goods at a profit. The above is sound as we have shown by the authorities herein cited.

But, aside from this, we earnestly and vigorously maintain that, if by any theory of the case Weeks could be absolved from liability, there was no ground for the court to refuse to submit to the jury the question of Russell's liability to decedent's wife and child for his wrongful death.

The record shows that: (1) Appellants' intestate was on the public side walk of Ackerman. (2) He was engaged in a lawful and laudable undertaking, to-wit, investigating an unusual light in defendants' drug store in the early morning hours, without any knowledge that one of them was concealed therein. (3) Further than merely shaking the door to said store to see if it had been tampered with, he did nothing which would cause any reasonable man to believe that there was necessity for using firearms to repel an intrusion. (4) Appellee Russell shot down Idom and a companion without any warning whatever. (5) Russell knew that the town of Ackerman was generally aroused over reported burglaries and that many citizens were out that night discussing the matter of protection and making plans therefor. How far can one go to repel an invasion or to prevent deprivation of property? Certainly, he would be held within *reasonable* grounds. See 5 C. J. 632, 113, 47 Pac. 284; *Newson* v. *Russell*, 133 Ky. 29, 117 S. W. 305, 22 L. R. A. (N. S.) 724.

*Flowers & Brown, C. L. Hester* and *J. L. Seawright,* for appellees.

There is no proper theory on which Dr. Weeks could be held liable for the alleged act of Russell. They were

engaged as partners in carrying on a general drug store business but the partnership agreement did not provide nor contemplate that the partners should perform police duty. Neither did the nature of the business in which they were engaged require this of the members of the partnership. Nor can it be said that the alleged act of Russell was one done in the scope of the business of the partnership or as incident to its business. The undertaking of Russell, being that of performing police duty, was foreign to the business in which he was engaged as partner with Weeks, being that of a general drug store business, and one for the performance of which they could not contract.

And it cannot be contended that Russell rendered Weeks liable by the commission of such act on the theory that he was the agent of Weeks when he did not consent and in fact had no knowledge of the undertaking by Russell. The correct rule of law in this regard is very aptly stated in the case of *Marks* v. *Hastings,* 101 Ala. 165, 13 So. 297.

*The wrongful act of one partner must have been committed in the course and for the purpose of transacting the partnership business in order to render the other partner liable. Gilbert* v. *Emmons,* 42 Ill. 147, 89 Am. Dec. 412; *Kirk* v. *Garnett,* 84 Md. 383, 35 Atl. 1089; *Rosenkrous* v. *Barker,* 115 Ill. 331, 56 Am. Rep. 169, 3 N. E. 93; *Williams* v. *Hemdricks,* 115 Ala. 277, 11 L. R. A. 650, 22 So. 439; *Gruud* v. *Van Vleck,* 69 Ill. 478; *Page* v. *Citizens Banking Company,* 111 Ga. 73, 51 L. R. A. 463; *Shephard* v. *Hynes,* 104 F. 449, 45 C. C. A. 271, 52 L. R. A. 675; *Bernheimer* v. *Beeker,* 3 L. R. A. (N. S.) 221; and I Rowley Partn., secs. 509-512. There is no dissent from the rule that to hold one partner liable for the tortious act of his co-partner the act must have been committed within the course and furtherance of the partnership business or it must have been authorized or subsequently confirmed.

Then it is only necessary for us to decide if the alleged act of Russell was within the scope and furtherance of the business of Weeks & Russell. Course of business is defined in 1 Bouvier's Law Dictionary, page 695. When the alleged wrongful act was committed by Russell, he was not acting in the course and furtherance of the firm business.

Let us consider this case from another aspect. The view it is necessary to take of the alleged act of Russell, in order to fix liability against him, shows the non-liability of Weeks. If the alleged act was recklessly, wantonly and wilfully done, and the declaration alleged that it was, there is no theory on which liability therefor may be imputed to Weeks. A partner is never acting within the scope of the partnership business when he is acting wilfully and maliciously and his co-partner is not bound by such acts, unless authorized or subsequently ratified. Then the liability rests on other grounds than the partnership relation. In this case the alleged act of Russell was not authorized or subsequently ratified. It was not within the scope of the partnership business, consequently Dr. Weeks is not liable for it. *Persons* v. *Oldfield,* 101 Miss. 110, 57 So. 417; *McCoy* v. *McKowen,* 26 Miss. 487, 59 Am. Dec. 264; *Pickels* v. *McPherson,* 59 Miss. 216; *Gilruth* v. *Decell,* 72 Miss. 232, 16 So. 250; *Goodman* v. *White,* 25 Miss. 163; *New Orleans Ry. Co.* v. *Albritton,* 38 Miss. 277.

II. We will now consider the case as applied to appellee Russell. The declaration charges, in effect, that he recklessly, wilfully, carelessly, negligently and wantonly shot deceased, from the effects of which he soon died. This case is grounded on section 721 of the 1906 Code, section 501 of Hemingway's Code. There is no doubt but that Idom was shot by misadventure. Appellee Russell thought deceased was attempting to break into the store which he was guarding. The only question we have to decide is whether the circumstances justified him in

acting as he did.   The burden was on the appellants to show by the preponderance of proof that the alleged wrongful or negligent act of Russell was the proximate cause of the injury.   Did they meet this burden or in other words, did they make a *prima-facie* case.   We submit that they did not.   If the alleged act was justifiable under the criminal laws of the state, Russell was without negligence or wrong civilly.   Paragraph "e" of section 1230 of the Code of 1906, section 960 of Hemingway's Code.

Appellee Russell was justified in believing the deceased was attempting to break into the store for the purpose of burglarizing it, under the evidence of this case, if the statute above referred to has any application to an act of this kind committed by one while in a store house.   *Suell, Adm., etc.,* v. *Fred Derricott, et al.,* 149 So. Ala. 895, 23 L. R. A. (N. S.) 996; *Jones* v. *State,* 76 Ala. 8; *Cary* v. *State,* 76 Ala. 78; *Lee* v. *Ala.,* 92 Ala. 15, 25 Am. St. Rep. 17, 9 So. 407; 17 Corpus Juris 1252, section 104; *Jones* v. *State,* 76 Ala. 8; *Cary* v. *State,* 76 Ala. 78; *Lee* v. *State,* 92 Ala. 15, 25 Am. St. Rep. 17, 9 So. 407; *Foster* v. *Sheppard,* 258 Ill. 164, 101 N. E. 411, 45 L. R. A. (N. S.) 167, Ann. Cas. 1914B 572.   See, also, Wharton on Homicide (3 Ed.), par. 524; *State* v. *Bonifiglis,* 67 N. J. S. 239, 91 Am. St. Rep. 428; *State* v. *Miller,* 69 Atl. (Delaware) 841.

Argued orally by *Harry M. Bryan,* for appellant, and *J. L. Seawright* and *J. N. Flowers,* for appellee.

Sykes, J., delivered the opinion of the court.

This suit is by the widow and child of deceased for the alleged willful, reckless, and negligent killing of deceased by Russell, a member of the copartnership of Weeks & Russell.

The material averments of the declaration are that J. D. Weeks and Knox Russell are partners engaged in

the retail drug business in the municipality of Ackerman; that deceased, Gan D. Idom was employed by the Illinois Central Railroad Company and the Western Union Telegraph Company to look after their business at night, with offices in the depot of the town; that prior to the killing of deceased there had been several robberies committed in the town, and several stores had been broken into, and that a strict watch was being maintained in the town for the purpose of apprehending any burglars; that on the night of June 20, 1920, the defendants laid a scheme whereby to capture the burglars, and with the full knowledge and consent of both partners they agreed and undertook to guard the partnership store, and to guard the partnership property from depredation and loss; that Russell, as a partner, and with the knowledge, consent, and approval of his copartner, concealed himself in their store, heavily armed, with two other persons, all acting in the capacity as agents and employees of the said partnership, that these three men secreted themselves in the drug store of the partnership to await the coming of burglars; that about three o'clock in the morning of the 21st of June the deceased, Idom, from the depot, his place of business, saw what he supposed to be a light in the drug store, and, knowing of the recent burglaries, presumed some one was attempting to burglarize the drug store of the defendants; that he, with two companions, went from the depot over to the drug store to investigate; that as they approached the door of the drug store the defendant Knox Russell, without warning of any kind, recklessly, willfully, and carelessly, and negligently shot at the deceased, inflicting a fatal wound, from which Idom died about fifteen hours later.

There was a plea of the general issue by the partnership, and a special plea by J. D. Weeks, in which he alleged that he was not a partner of Russell in undertaking to defend the town of Ackerman or any particular property in the town against burglars; that he had no knowl-

edge of and did not consent to the undertaking of Russell to guard or help guard the town or any particular property; neither did he agree or consent that Russell should guard the drug store of Weeks and Russell; that the act of Russell in undertaking the duties of a guard was his own individual act, and not the act of a partner for which the defendant Weeks was responsible. To this special plea there was a replication by the plaintiffs alleging that Russell at the time of the fatal shooting was acting within the scope of the partnership business by undertaking to guard and protect the partnership property.

The material part of the testimony relating to the unfortunate killing of Idom is as follows: The sheriff of the county testified that a few nights before, the post office and a store had been entered by burglars, and that in the early part of the night of the killing it was reported there were some suspicious characters in the town, and the sheriff and marshal, along with some other citizens, looked around. The defendant Russell was in the crowd. There was general excitement in the town because of the burglaries. That this party broke up about nine or ten o'clock. No one was deputized by the sheriff to guard the town that night. The sheriff was notified about the killing about four o'clock in the morning. When he reached the town Idom was in the depot. When he reached the depot he was informed that there was a dead man over in front of Weeks & Russell's Drug Store. He then went over there, and found the body of Robert Quinn. Knox Russell told the sheriff that he shot Idom. Russell's statement was to the effect that some persons came to the door, and he took them to be burglars, and shot twice. The bullets went through two wire screen doors. Russell further stated to the sheriff that he had placed himself in the drug store under a bench near the front door to watch for burglars; that he thought they would get them that night. Two other men were in the

store with Russell. Russell shot twice, fatally wounding Quinn and Idom.

The sheriff further testified that Weeks & Russell were partners engaged in the drug business; that Russell principally attended to the business; and that Dr. Weeks stayed in the drug store sometimes, and probably filled some prescriptions, and occasionally waited on a customer, but the principal business of the partnership was conducted by Russell. The sheriff further testified that previous to that night, in all there had been about five or six houses and stores entered by burglars.

Garland Weaver was with Idom and Quinn at the time of the shooting. He testified that it occurred between three and four o'clock in the morning; that prior to the shooting the three of them were in the depot; that they saw over in the drug store a light two or three times which they took to be from a flash light; that they concluded to go over and investigate; that they tiptoed up to the front door of the drug store, and there Idom and Quinn held a whispered conversation for about five minutes. And then one of the men who was shot shook the lock on the door. After shaking it the first time, something was said between Idom and Quinn, whereupon the lock of the door was shaken again, and immediately the two shots were fired.

It was a very dark night, and evidently impossible to identify any one with whom you came face to face. This in brief was the material testimony introduced on behalf of the plaintiffs. At its conclusion, upon motion of the defendants, the testimony was excluded, and the peremptory instruction given on behalf of each defendant.

From a judgment in favor of the defendants this appeal is here prosecuted.

First, it is the contention of the appellant that the question of whether or not Russell willfully, recklessly, and negligently shot Idom, and is therefore liable therefor, under this testimony was one of fact to be decided by

the jury; second, that at the time of the shooting Russell was guarding the property of the partnership, and preserving the corpus of the firm's business, and that this act was performed in the course of the business for the purpose of preventing a loss of its goods, and was therefore an act performed within the course of the business of the partnership, for which both partners are liable. As to the question of the liability of the defendant Knox Russell, the testimony of the plaintiff as set forth above was sufficient to submit it to a jury.

Second. Weeks and Russell were partners engaged in the drug business. The partnership and each member is, of course, liable for the act of one partner in the transaction of this business. There is no testimony to show that the members of the firm contemplated the guarding of the store at night. It does not show that they employed a night watchman for this purpose, nor that either or both members of the firm were expected to do this kind of police or guard duty. The ordinary partnership business of this character does not contemplate guarding the property during the dead hours of the night when the store is not open for the transaction of business. Dr. Weeks knew nothing of the plan of Russell to conceal himself in the store, and there watch for and try to apprehend any burglars. The admission of Russell to the sheriff was not that he was in the store for the purpose of trying to protect the property of the firm, but that he was there for the purpose of trying to apprehend and capture the burglars. According to this statement of Russell his dominant purpose was not for the preservation of the partnership property but rather to try and capture the burglars. The store is situated in the business part of the town where the other business stores are. The relationship existing between partners, and the liability of one partner for the act of another, is the same as the liability of the principal for the act of his agent. In other words, the ordinary rules of agency govern the liability of one partner for the act of another.

If the act or tort of the partner be committed while he is engaged in the partnership business, and is in furtherance of the interest of the partnership, then the partnership and all partners are liable. This rule is well stated in the case of *Page* v. *Banking Co. et al.,* 111 Ga. 73, 77, 36 S. E. 418, 419, 51 L. R. A. 463 (page 469), as follows:

"One partner may be rendered liable for the acts of his copartner. Whether or not he is so liable is to be determined by the application of the rules governing the relation of principal and agent; and generally the partnership is liable for the act of one of the partners, if it would have been liable had the same act been committed by an agent intrusted by the firm with the management of its business. 17 Am. & Eng. Enc. Law (1 Ed.), 1066. If a tort be committed by one partner while engaged in a transaction within the scope of the partnership business, and such tort be committed in furtherance of the interests of the partnership, it will be liable. But it will not be liable for a tort committed by one partner in a transaction outside of the partnership business, where he acts from his own private malice or ill will, unless the act which constituted the tort was authorized by the members of the partnership, or subsequently ratified by them; the act itself having been done in their behalf and interest. Mechem, Partn., sections 204, 205; T. Parsons, Partn. (4th Ed.), sections 100, 102, 105; 1 Bates, Partn., section 461; 1 Lindley, Partn., sections 149, 150; 1 Jaggard, Torts, section 99; Barbour, Partn. (2 Ed.), p. 350, chapter 2, section 13. The authorities just cited establish simply that, as a partnership is an aggregation of individuals, where each one is the authorized agent of the others to perform any act within the scope of the partnership enterprise, if one of them, in the prosecution of the business of the partnership, be guilty of a willful wrong towards another, the other partners will be liable, and that, if one partner is guilty of an act outside of the partnership business which causes any injury, the other partners will not be liable, unless it appear that such act was

expressly authorized by them, or, after the same had been performed in their behalf and interest, they had either expressly ratified the same or knowingly received the fruits of the wrongful act.''

It was not within the scope of the partnership business, and the ordinary partnership agreement does not contemplate, that one partner, when the place of business is closed for the night, shall go to the store and there conceal himself to try and capture burglars.

The Mississippi authorities relied upon by appellant are *Heirn* v. *McCaughan,* 32 Miss. 17, 66 Am. Dec. 588, and *Robinson & Pattison* v. *Goings,* 63 Miss. 500.

In the *Heirn Case, supra,* the tort of the partner complained of was with reference to the business of the firm and an incident to its business.

In the *Goings Case, supra,* the court said that in the seizure of the cotton ''Pattison acted . . . as the agent of the firm; it was in the prosecution of the firm's business and under claim of title for the firm that he seized the cotton and placed it in their warehouse. Under these circumstances Robinson, even though he personally took no part in the illegal act, was equally liable at the suit of the owner''—(Citing authorities.) In that case Pattison was clearly transacting the usual business of the firm, namely, in collecting accounts and taking possession of the firm's property.

The correct rule is also well stated in the case of *Marks* v. *Hastings,* 101 Ala. 165, 13 So. 297, as follows:

''Though a partnership is responsible for the wrongful act of one of its members, committed in the course, and for the purpose of transacting the partnership business, the willful tort of one partner, when not so committed, is not imputable to the firm.''

''Course of business'' as defined in Bouvier's Law Dictionary, Rawles Third Rev., is ''what is usually done in the management of trade or business.'' The act of Russell in this case was not committed within the course of business of the partnership.

In the case of *Persons* v. *Oldfield,* 101 Miss. 110, 57 So. 417, this court said:

"The authority of one partner to bind his copartner is placed solely upon the ground of agency, and hence one can bind the other only within the scope of the agency."

The same doctrine applies to the liability of the master for the tort of the servant. In the case of *Hines* v. *Cole,* 123 Miss. 254, on page 264 (85 So. 199, 200), the court there stated that the injured employee could not recover because "Cannon [the employee who committed the assault] was not acting within the course of his employment and with a view to his master's business."

The court was correct in giving a peremptory instruction in favor of Dr. Weeks, but committed error in giving one in favor of Russell.

*Affirmed as to Weeks, and reversed and remanded as to Russell.*

Ethridge, J.

I dissent from the opinion of the majority in so far as it holds that the record warranted a peremptory instruction in favor of J. D. Weeks, one of the partners, but agree with the majority as to Russell's liability. Russell was the managing partner of the business, and had general control of the drug store. Dr. Weeks sometimes assisted in the business, but was engaged in the practice of medicine, and was not regularly in the store.

As stated in the majority opinion, there had been some burglaries in the town of Ackerman, and rumours of others to be committed, and on the evening prior to the killing there had been a general meeting of the citizens of the town for discussing plans for meeting the situation. The crowd, however, dispersed, and Russell went to the store, taking two other persons with him, and entered the store. The record does not show that he served any notice on any of the people of the town of his purpose of being in the store to guard the store. He had not been deputized, as far as the record shows, to serve in any capacity as an officer in policing the town, and he

was not engaged in such duty at the time of the killing, but was in his own place of business armed, and the evidence shows that a light flashed on and off in the store which attracted the attention of the deceased and his companions who were at the railroad depot, the plaintiff's husband being an agent engaged in the business of the railroad company and of the telegraph company at the depot. These parties, having been with the citizens in their meeting, and fully advised of the fears of burglary, suspected that burglars were in the drug store, and proceeded to the store, and tried the door to see if it was open. Russell and his companions made no effort whatever to arrest the parties, did not call out to them to surrender, or give them any notice whatever that they were the parties who were inside the store, but Russell, who was armed with a pistol, raised up from the floor fired two shots, resulting in the death of the two men.

Russell was a partner and joint owner of the goods in the drug store, and manifestly was there solely for the purpose of protecting the property of the partnership.

If it is the duty of a partner to preserve and protect the partnership assets, then without doubt Russell was engaged in and about the business of the partnership at the time of the killing, and the killing was for the purpose solely of preventing the store from being burglarized, as there was no effort whatever to make an arrest.

In 20 Ruling Case Law, p. 882, section 94, under the heading "Agency of Partners," the law is stated as follows:

"The law of partnership is a branch of the law of agency. The functions, rights, and duties of partners in a great measure comprehend those of agents, and the general rules of law applicable to agents likewise apply to partners. Accordingly the liability of one partner for the acts of his copartners is founded on the principles of agency. Every partner in a commercial partnership, apart from any special powers conferred on

him by the articles of copartnership, is not only a principal, but also a general and authorized agent of the firm, and the agent of all the partners for all purposes within the scope and objects of the partnership. Thus it is that a partner embraces the character both of principal and agent. With respect to the concerns of the partnership, he virtually acts as principal for himself and as agent for his partners. During the existence of a partnership therefore each member is deemed to be authorized to transact the whole business for the firm, his acts being treated as the acts of all, and binding on them, just as if they were present and sanctioning that which is done, whether it is done in the firm name or in the name of a partner."

In *Heirn* v. *McCaughan,* 32 Miss. 17, in the seventh and eighth syllabi, our own court makes the following announcement:

"A partner cannot bind the firm by an act clearly not within the partnership business; yet he has power to bind the firm in all parts of the business in which it is engaged, and in all transactions, whether direct or incidental, appertaining to its business. And though the partner exceed the terms of the partnership, yet so far as third persons, having transactions with them, without notice, are concerned, the copartners are bound, if the transaction be such as the public may reasonably conclude to be embraced within the partnership business, or be incident or appropriate to such business, according to the course and usage of carrying it on.

"The tort of one partner is considered the joint and several tort of all the partners, wherever the wrongful act complained of is connected with the business of the firm or is incidental to it, as the business is carried on; and a partner who has no direct participation in the tort of his associate, is chargeable *civiliter* to the same extent (including exemplary damages) as the real actor is bound."

At page 50 of this report (32 Miss.), our court said:

"It remains only to consider the grounds upon which it is urged that a new trial should have been awarded on the defendant's motion, and which have not already been considered.

"First. It is said that, as there was no evidence tending to show that Heirn had any actual participation in making the appointment for the stoppage of the boat at Pascagoula, or in giving the notice, or in the failure, he could not be held responsible, though his copartners, Geddes and Grant, might be; for one partner is not chargeable with the tort of his copartners, done without his knowledge.

"This would be true if the wrongful act was wholly unconnected with the partnership business. But where it is connected with the business of the firm, and is incident to it as the business is carried on, the tort of one partner is considered the joint and several tort of all the partners; and the partner doing the act is considered as the agent of the other partners. And it is held that, in such cases, all the members of the firm may be sued, or any one of them may be sued alone."

In the case of *Robinson & Pattison* v. *Goings,* 63 Miss. 500, it was held that both partners of a partnership were liable for punitive damages for the unlawful seizure and detention of one's property whereby he is prevented from the orderly prosecution of his business, and where in such case the property is seized by the one member of the firm in attempting to collect a debt of the firm the other member of the firm is equally liable with the one who made the seizure of such property to the owner thereof.

In *Russell* v. *Palatine Ins. Co.,* 106 Miss. 290, at page 300 (63 So. 644, 645, 51 L. R. A. [N. S.] 471), our court said:

"A servant intrusted with his master's goods may do what is necessary to preserve and protect them, because

his authority to do so is clearly implied by the nature of the service.''

If therefore one partner is the agent of the other partner for the purposes of the partnership, then Russell had the right to protect the assets of the partnership from being burglarized, and, if in attempting to do this he negligently and unnecessarily killed the plaintiff's intestate, then both members of the partnership are clearly liable for such wrongful killing. It seems to me that it could not be contended that Russell did not have the authority to employ a person to go in the store and guard it, and, if he had done so, and such person so employed to guard the property had negligently killed the parties who were killed in this case, both partners would have been liable; Russell having full authority to make any contract for such purpose. It seems to me it could not be disputed that a partner is under duty to preserve and take care of partnership property, and, if he had knowledge of the burglary or theft which would lead him reasonably to believe that such would be committed, and failed to take some action to prevent the burglary or theft, that he would be liable to his partner for the damages or theft, unless he gave due notice to the other partner so that he would take proper steps to protect his own interests.

It is well-settled law that a person or a corporation is liable for the acts of his employees and agents committed in the scope of their employment, even though they act unnecessarily or willfully in performing the act which lies within the scope of their employment.

In *King* v. *I. C. R. R. Co.*, 69 Miss. 245, 10 So. 42, this court held that a railroad company was liable for the arrest of a person by its depot agent, even though the act of February 22, 1890 (Laws of 1890, p. 106), constitutes the depot agent in this state a conservator of the peace, with authority to preserve order in waiting rooms, and with power to make arrests. The court held

that the act in question did not make depot agents officers of the state, but merely enlarges and defines their duties as agents of the railroad company. It was held that, if a depot agent arrest one not guilty of disorderly conduct or otherwise liable to arrest under the statute, the company is liable for false imprisonment, although the agent had no express instructions to make the arrest, and supposed he was acting as an officer of the state. The case was reversed and came on for trial again, and a second appeal was taken to this court, which is reported in 69 Miss. 852, 13 So. 824, and the court again held the railroad company liable for an unlawful arrest and imprisonment, if made by its agent while acting within the scope of his employment, notwithstanding that in doing so he was also acting for another railroad company.

In *N. O. J. & G. N. R. R. Co.* v. *Allbritton,* 38 Miss. 242, at page 277 (75 Am. Dec. 98), our court laid down this rule as governing the liability of the principal for the torts of his agent:

"In all cases where it appears that the employment of the principal afforded the agent the means or opportunity, which he used while so employed, in committing an injury on a third person, the principal must be held responsible. The willful trespass, or injury of the agent, derived from the authority confided to him by the principal, as a source of power, in the exercise of his master's employment, will make the principal responsible. And this upon the reason, that he who employs and confides should be the loser rather than a stranger—a rule of justice entirely consonant with the maxim of the Roman law already cited."

In *Valley Dry Goods Co.* v. *Buford,* 114 Miss. 414, 75 So. 252, we held that the owner of the store was liable for slander uttered by its agent in and about the company's business. And in the recent case of *Kress & Co.* v. *Crosby,* 98 So. 437, we held that the corporation was

liable for the acts of its manager in committing an assault upon an employee about the master's business in connection with another person. There are numerous other cases in our reports making the principal responsible for the acts of the agent when committed in and about the master's business, although unauthorized by the master, and, in some cases, even contrary to his express directions.

In *Pearson* v. *Great Southern Lumber Co.,* 134 La. 117, 63 So. 759, L. R. A. 1916F, p. 1247, the Louisiana supreme court announced the following proposition of law:

"(1) A corporation is liable in damages for an unlawful arrest instigated by one of its employees acting in the pursuit of an object relating to the business of his employer, and designed to be of benefit to it.

"(2) Where the electric bulbs of a corporation had been broken by unknown persons, and a watchman in the employ of the corporation causes the arrest of a person whom he suspects of having broken some of them, he is acting for the benefit of the corporation, and, if the arrest is illegal, and without probable cause, the corporation is liable to the person illegally arrested, and the fact that the arrest is actually made by some one other than the watchman, but at his instigation, does not shift the liability of the corporation.

"(3) An arrest for a misdemeanor not committed in the presence of the officer arresting should not be made without an affidavit and warrant, and, where this is done without a sufficient inquiry as to the guilt of the party arrested, the person or corporation responsible for the arrest is liable in damages."

To the L. R. A. report in this case, at pages 1249 et seq., is a case note citing a number of cases pertinent to the inquiry now before the court. I quote from the case note as follows:

"Thus the master is liable for the act of his watchman in assaulting and arresting one whom he erroneously believed to be a trespasser, where he had authority to

eject trespassers from the master's premises and to arrest them for trespassing. *Childers* v. *Southern P. R. Co.* (1915), 20 N. M. 366, 149 Pac. 307. . . .

"A private detective, employed by a store company to guard its property from theft, and to report to the company or to the city detectives when thefts were committed, was acting within the scope of her authority in following a person suspected of carrying away the company's property, and procuring her arrest by a policeman away from the store, rendering the store company liable for false imprisonment. *L. S. Ayres & Co.* v. *Harmon* (1914), 56 Ind. App. 436, 104 N. E. 315.

"Evidence that a peace officer was employed by proprietors of a store to guard the merchandise from theft, detect thieves, and recover property that had been stolen is sufficient to warrant a court in submitting to the jury the question whether the officer was acting within the scope of his employment, so as to render the proprietor liable for his conduct, in following from the store and assaulting and arresting a woman whom he suspected of shoplifting. *Perkins Bros. Co.* v. *Anderson* (1913), — Tex. Civ. App. —, 155 S. W. 556.

"A deputy constable, employed by the manager of a show to preserve order, was acting in the course of his employment rather than in his official capacity as a public officer, so as to render the employer liable for his conduct, in settling a dispute as to who was entitled to a seat, and in forcibly removing and arresting and incarcerating a person who refused to vacate the seat, where he was instructed to settle the dispute, although he was not instructed to make the arrest. *Rucker* v. *Barker* (1912), — Tex. Civ. App. —, 151 S. W. 871. . . .

"A watchman employed to protect the property of a railroad company, and to make arrests, was acting solely in the furtherance of the company's business and in *its* interest in arresting a person suspected of stealing property from the cars, so as to render the company liable

where the arrest was wrongful. *Louisville & N. R. Co.* v. *Owens* (1915), 164 Ky. 557, 175 S. W. 1039. . . ."

In "*Thomas* v. *Canadian P. R. Co.* (1906), 14 Ont. L. Rep. 55, 8 Ann. Cas. 324, Mulock, C. J., said: 'As watchman, deriving authority from the company, it was his duty to protect the property on their premises which they had intrusted to his care, and he was thus clothed with implied authority from them to do such reasonable acts as he might, on the exigency of the moment, deem necessary, in order to prevent injury to their property. If, therefore, he had found the plaintiffs on the premises of the defendants, endeavoring to steal the property placed by them under his charge, it would have been within the scope of his authority, as their servant, to arrest them, if he deemed it advisable to do so, in order to perform his duty as watchman, of preventing injury to the property in question. But such was the limit of his implied authority, and any acts of his in excess of such authority would not bind the defendants.' "

In *Conchin* v. *El. Paso & S. W. R. R. Co.,* (1910), 13 Ariz. 259, 108 Pac. 260, 28 L. R. A. (N. S.) 88, the court held that a person, employed to watch the premises, and to turn over to police officers any person whom he believed to be committing a crime against the property, acts within the scope of employment in firing at a fleeing trespasser. It also held that a watchman was guilty of wantonness which will render his master liable for the consequences of his act in firing at a technical trespasser upon the master's property, who is retreating to avoid arrest or assault, although he did not intend to hit him, but only to halt or frighten him.

In *Johnston* v. *Chicago, St. P., M. & O. R. Co.,* 130 Wis. 492, 110 N. W. 424, the master was held liable for the acts of the servant, where the servant in question was a watchman with authority to investigate past offenses, who assaulted and imprisoned the plaintiff for the sole purpose of obtaining information as to whether the latter had been guilty of throwing sticks at passenger cars. The

court said the servant was performing his duties in his own way, and, although the methods employed were unlawful and unauthorized, they were within the scope of his duty, and were therefore the acts of the company.

In *Magar v. Hammond,* 183 N. Y. 387, 76 N. E. 474, 3 L. R. A. (N. S.) 1038, the court held that a property owner is liable for the act of his servant charged with the duty of guarding his property, where the servant, in shooting a poacher thereon, acts within the general scope of a servant's employment, and that the act was done with a view to the furtherance of the master's business, although it was willful, wanton, and reckless, and that the question as to whether or not such act of the servant was within the scope of his employment is a question for the jury.

For other cases see, *Mayor, etc., of City of Vicksburg v. Holmes,* 106 Miss. 234, 63 So. 454, 51 L. R. A. (N. S.) 469, and case note; *Page v. Citizens' Banking Co.,* 111 Ga. 73, 36 S. E. 418, 78 Am. St. Rep. 144, 51 L. R. A. 463, and note; *State v. Mason,* 26 Or. 273, 38 Pac. 130, 26 L. R. A. 779, 46 Am. St. Rep. 629.

If we substitute the word "principal" for "master," and the word "agent" for "servant," these cases are precisely applicable to this suit. The relationship of partners involves, not only rights and liabilities between the partners, but also with other persons dealing with or affected by the partnership. As stated by the editors of the L. R. A., first series, and the case note to the 51 L. R. A. 469, toward the end of the note, there can be no sound reason for applying one rule to a corporation and another to a partnership.

I am requested by the Chief Justice to say that he concurs in the views herein expressed.