John Dale MACLAY, Appellant,

v.

KELSEY–SEYBOLD CLINIC, Appellee.

No. 15614.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

April 9, 1970.

Rehearing Denied June 18, 1970.

Robert L. Dabney, Jr., Houston, Austin, Dabney & Northrop, Houston, of counsel, for appellant.

Robert M. Welch, Jr., Dan G. Matthews, Houston, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel, for appellee.

PEDEN, Justice.

Alienation of affections case. Plaintiff sued both Dr. Brewer and Kelsey-Seybold Clinic, a medical partnership of which Dr. Brewer was a partner. Plaintiff has perfected this appeal from the granting of a summary judgment in favor of the clinic. The cause of action against Dr. Brewer has been severed and is still pending.

The petition of the plaintiff, John Maclay, alleged that both Dr. Earl J. Brewer, Jr. and the Clinic had treated him, his wife and their children medically for several years and that Dr. Brewer, as a pediatrician and one of the partners in the Clinic, had been the doctor to whom his wife had taken their children. That beginning in late 1966, Dr. Brewer conceived and entered into a scheme to alienate the affections of the plaintiff's wife, Mrs. Maria Maclay, showering his attentions and gifts upon her until April or May of 1967, when her affections for the plaintiff were alienated as a direct result of Dr. Brewer's actions, causing her to separate from the plaintiff.

The appellant's petition further alleged that Dr. Brewer's actions designed to alienate the affections of Mrs. Maclay were made while he was acting as medical doctor for the plaintiff's family in the course and scope of his employment as a partner in the Kelsey-Seybold Clinic, and included certain actions that allegedly occurred between November, 1966 and June, 1968. That the Clinic, through Dr. Kelsey, its managing partner, had knowledge since before April, 1967, of such actions by Dr. Brewer while the partners were the treating doctors for the plaintiff and his family, and that the partnership consented to, ratified and condoned such conduct of its partner and refused to try to halt or disapprove of his actions.

The plaintiff seeks actual and exemplary damages from the defendants jointly, severally and individually for the loss of consortium and affections of his wife.

On October 27, 1969 the trial judge signed an order granting the second motion for summary judgment filed by defendant Kelsey-Seybold Clinic. Its first motion had been denied.

The plaintiff urges two points of error. They are:

1. Appellee, having failed to clearly show that there were absolutely no fact issues upon which it could be held liable, while standing in a fiduciary relation to appellant, his wife, and his family, with its partner and co-fiduciary, Dr. Brewer, for Brewer's breach of trust in alienating the affections of appellant's wife, either before or after the clinic knew of it and under the other circumstances reflected by the record, the trial court erred in granting appellee's second motion for summary judgment, and in entering judgment that appellant take nothing by his suit against the clinic.

2. Appellee's first motion for summary judgment having been overruled by the Honorable Ewing Werlein, presiding and the record before the trial court at the hearing on its second motion being identical to the record before Judge Werlein, the trial court erred in granting appellee's second motion for summary judgment and thus setting aside Judge Werlein's earlier ruling.

For the purpose of this summary judgment and appeal only, the Clinic concedes:

1) Dr. Brewer was a partner in the Clinic;

2) The Maclay family members were patients of the Clinic;

3) Dr. Brewer alienated Mrs. Maclay's affections.

4) Dr. Kelsey was informed in April, 1967 by Maclay that an improper relationship existed between Dr. Brewer and Mrs. Maclay.

The Clinic has offered no affirmative defenses. The question on appeal is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. Rule 166-A(c), Texas Rules of Civil Procedure; Gibbs v. General Motors Corp., 450 S.W.2d 827 (Tex. 1970).

The summary judgment evidence in this case includes the depositions of three persons: Dr. Mavis Kelsey, chairman of the staff of the Clinic, Helen Brown, a nurse who began working at the Clinic and with Dr. Brewer on March 25, 1968 (two weeks after plaintiff's original petition was filed) and James Bakken, administrator of the Clinic. It does not include any depositions of Dr. Brewer or of Mrs. Maria Maclay. It does include the Clinic's medical records of the Maclay family and an affidavit of all the members of the executive committee of the Clinic except Dr. Brewer, stating that such committee is charged with responsibility for setting policy for the partnership, that the business of the partnership is that of operating a medical clinic, that Dr. Brewer was not authorized by the partnership at any time to do any act which might result in the alienation of the affections of Maria Maclay from her husband and that the partnership had done no act with the purpose, intent or design to alienate her affections.

Nurse Helen Brown's deposition does not negative any issue of fact as to any essential element of the plaintiff's cause of action. She was able to testify only that she did not know of the occurrence of any of the alleged events; she could not say that they did not occur.

In Dr. Kelsey's deposition he stated, among other things, that he is chairman of the staff of the Clinic. That he treated the plaintiff ten or fifteen years ago and other doctors in the Clinic have treated

him and his wife and children since then. That at some time in the spring of 1967 the plaintiff complained to him that Dr. Brewer was having an affair with Mrs. Maclay and at about the same time a doctor related to Mrs. Maclay also called him about the same matter. He stated that he did not talk to Dr. Brewer about it until after this suit had been filed. He did not believe it possible that improper acts happened in the Clinic, and he couldn't possibly keep up with the private lives, outside the Clinic, of over fifty doctors. That the Clinic has not adopted a policy of intentionally alienating Mrs. Maclay's affections. Whenever a female patient is examined or treated by a doctor in the Clinic, a nurse is always present. That the partners wouldn't put up with any improper acts in the Clinic. That Maclay told him when he called that he and his wife had separated.

Dr. Kelsey also stated that his impression of the purpose of the plaintiff's two telephone calls was to seek sympathy. That the plaintiff had not asked him to do anything and that he had not done anything.

The deposition testimony of Mr. Bakken does not establish as a matter of law any fact with which this appeal is concerned.

■ The gist of an alienation of affections action is the intentional or purposeful alienation of the affections of one spouse from the other. Williams v. Rearick, 218 S.W.2d 225 (Tex.Civ.App.1949, no writ); Collier v. Perry, 149 S.W.2d 292 (Tex. Civ.App.1941, err. dism. judg. corr.); 30 Tex.Jur.2d 241, Husband and Wife, § 153.

■ "A non-participating partner is ordinarily not personally liable for the wrongful, tortious or criminal acts of the acting partner unless such acts are within the scope of the partnership's business or were consented to, authorized, ratified or adopted by the non-participating partner." K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.

W.2d 782, 793 (Tex.Sup.1958); 68 C.J.S. Partnership § 168, page 617.

An affidavit made by the plaintiff was filed in opposition to the Clinic's motion for summary judgment. In it Maclay stated that he had called Dr. Kelsey to ask if he was aware that Dr. Brewer had a romantic interest with Mrs. Maclay and that Dr. Kelsey said he was aware of it and had talked to a relative of Mrs. Maclay's about it.

■ We sustain the appellant's first point of error. The Clinic has not established as a matter of law that there is no genuine issue of fact as to an essential element of the plaintiff's cause of action: namely, whether it had consented to the alleged wrongful conduct of Dr. Brewer.

In view of our holding it is not necessary for us to reach the appellant's other arguments under his first point or his second point.

The judgment of the trial court is reversed and this cause is remanded.

### On Motion for Rehearing

The appellee points out that the general rule is that a nonparticipating partner is not liable unless the tortious act was done within the course and scope of authority. It adds that an exception to this rule is recognized when the nonparticipating partner adopts or ratifies the unauthorized conduct, and it asserts that an exception based on consent (or ratification or adoption) applies only to unauthorized acts purportedly done on behalf of, or for the benefit of one alleged to have ratified the act.

The rule stated in the K & G Oil Tool & Service Co. case, supra, and quoted in our opinion, has frequently been observed in opinions and texts, sometimes in slightly different terms.

In its opinion in the K & G case our Supreme Court cited Corona Petroleum Co. v. Jameson, 146 S.W.2d 512, 516 (Tex.Civ. App.1940, writ dism., correct judg.), when

it enunciated the Texas rule on this point. In Corona it was stated:

"To hold all members of a partnership liable jointly and severally, it must be made to appear from the evidence that the wrongful acts of the offending one were, in law, authorized by the partnership, or were done in the performance of something connected with the furtherance of the interests of the copartnership; these things may be proved by direct or circumstantial evidence. * * *"

A leading case, Schloss v. Silverman, 172 Md. 632, 192 A. 343 (1937), discusses application of the rule to a number of fact situations and states "the weight of authority supports the view that where one partner commits a willful and malicious tort not within the scope of the agency or the common business of the partnership, to which the other members have not consented, and which has not been ratified, they are not liable for harm thereby caused."

A frequently cited statement of the rule is found at 40 Amer.Jur. 262, Partnership § 190. "A necessary foundation for the liability of partners or the partnership for the tortious act of a copartner is that the act shall be performed in the line of the copartnership business, and if the injury results from a wanton or wilful act of one of the parties committed outside the agency or common business, then the person doing the act and causing the injury is alone responsible, unless the act which constituted the tort was authorized by the members of the partnership or subsequently ratified by them, the act itself having been done in their behalf and interest." Does "the act itself having been done in their behalf and interest" apply to acts authorized as well as those ratified by the other members of the partnership? We look to the only case cited by the text in support of the rule, Idom v. Weeks, 135 Miss. 65, 99 So. 761. In explanation of the point it was stated: " 'The authorities just cited establish simply that, as a partnership is an aggregation of individuals, where each one is the authorized agent of the others to perform any act within the scope of the partnership enterprise, if one of them, in the prosecution of the business of the partnership, be guilty of a willful wrong towards another, the other partners will be liable, and that, if one partner is guilty of an act outside of the partnership business which causes any injury, the other partners will not be liable unless it appear that such act was expressly authorized by them, or, after the same had been performed in their behalf and interest, they had either expressly ratified the same or knowingly received the fruits of the wrongful act.' " Citing Page v. Citizens Bkg. Co., 111 Ga. 73, 36 S.E. 418 (1900).

The K & G Oil Tool & Service Co. case, supra, states the rule broadly enough to apply to either acts which were consented to or authorized by the nonparticipating partner. We find no Texas case which indicates the character of consent needed to make a nonparticipating partner liable, but note the holding in the case of Gilbert v. Emmons, 42 Ill. 143, 89 Am.Dec. 412 (1866), cited at 120 A.L.R. 1325, that mere knowledge and consent of one partner in the act of a copartner in causing the arrest of a person on a charge of larceny of money belonging to the firm will not render the partner so knowing and consenting liable to an action for malicious prosecution, but it is necessary that the consent be of such a character as to amount to advice and cooperation.

Other courts have not required that the consent shown be more than tacit. In Dulchevsky v. Solomon, 136 Wash. 645, 241 P. 19 (1925), cited in Vrabel v. Acri, 156 Ohio St. 467, 103 N.E.2d 564, 30 A.L.R.2d 853 (1952) which was cited in the K & G case, supra, it was held that a jury issue as to liability of Morris Solomon for a willful and malicious attack on a customer by his partner, Joseph Solomon, was raised by evidence that Morris was present but did not say or do anything. This was held to be sufficient evidence to raise a fact issue as to Morris' tacit consent to Joseph's attack.

"The rule is as stated in Polis v. Heizmann, 276 Pa. 315, 120 A. 269 (1923), which decided that, while the act of the offending partner was committed during a transaction which was within the scope of the firm's business, the offense of assault was not, and said: 'The case is different where the master or partner sought to be charged was present at the assault and failed to protest.' * * *"

We consider that the cases cited by the appellee support its position that the partnership may be held to have ratified only those unauthorized acts purportedly done on behalf of or for its benefit, but we do not agree that Sullivan v. O'Brien, 85 S.W.2d 1106 (Tex.Civ.App.1935 writ ref.), supports its argument that consent alone cannot establish the liability of a nonparticipating partner for malicious acts of his copartner. We believe that in the Sullivan case it was not shown that the defendants were partners of the one whose acts were allegedly malicious.

It is not for us to speculate in this summary judgment proceeding on what possiblity there might be of the appellant's showing in a trial on the merits that any of Dr. Brewer's partners consented to his alleged conduct.

The appellee's motion for rehearing is denied.