CARLSON, Presiding Justice,
Dissenting.
¶46. I agree with the majority inasmuch as “the trial court possessed the discretion to sanction SKG, but only upon a finding that Richard Scruggs’s misconduct was within the ordinary course of business of SKG.” (Maj. Op. at ¶33). However, as to issue two, concerning whether Scruggs was acting in the ordinary course of business, I must disagree with the majority’s conclusion that Scruggs was not acting in furtherance of SKG.
¶ 47. Vicarious liability falls under the auspices of Section 79-13-305(a), which states:
A partnership is liable for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership.
Miss.Code Ann. § 79-13-305(a) (Rev.2009). I do not interpret this statute as implying that the other partners need have knowledge (actual or constructive) of the wrongful or actionable conduct to be held liable — so long as the wrongdoer has acted in the ordinary course of business of the partnership. I believe Duggins v. Guardianship of Washington Through Huntley, 632 So.2d 420 (Miss.1993), is in accord with this premise, because this Court clearly stated therein: “[Ojther partners, though innocent without knowledge of the act or omission, can be vicariously liable.” Id. at 429. Unlike the majority, I do not interpret the holding in Duggins as having also relied on the fact that Duggins should have known of his partner’s malfeasance due to the presence of “red flags.” The majority interprets Duggins as follows:
[I]n affirming the damages assessed against Duggins, this Court did not solely rely upon partnership principles, but also upon the chancellor’s finding that Duggins was guilty of omissions that contributed to the guardianship’s loss of assets. We noted that the guardianship had relied on Duggins, as well as Bar-field, to pursue its interests, and the chancellor recognized that “there were sufficient ‘red flags’ which should have caused Duggins to realize that something was amiss.” Therefore, we stated in addition to Barfield’s misdeeds, “Dug-gins’ negligence and inaction in investigating Barfield’s suspicious conduct allowed the guardianship to be stripped of all its assets.”
(Maj. Op. at ¶ 37) (quoting Duggins, 632 So.2d at 429) (internal citations omitted). I submit that what the majority quotes as the holding in Duggins is merely dicta, and that the holding of the case is not prem *378 ised on Duggins’s negligence. A plain reading of the statute does not lend itself to an interpretation that actual or constructive knowledge of the wrongful conduct is required for liability to attach. “In considering a statute passed by the legislature, ... the first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction.” Miss. State Univ. v. People for Ethical Treatment of Animals, Inc., 992 So.2d 595, 606-07 (Miss.2008) (quoting Estate of Klaus v. Vicksburg Healthcare, LLC, 972 So.2d 555, 556 (Miss.2007)).
¶ 48. That having been said, even if this Court is prepared to hold in today’s case that an innocent partner can be held hable for the acts of another only if the circumstances are such that “there were sufficient red flags,” then I wish to point out that the $40,000 used in the bribery scam was paid out by SKG to Richard Scruggs under the pretense that Richard Scruggs owed $40,000 to Timothy Balducci for voir dire services in the Lisanby case, a Katrina case which had never been tried. I am persuaded by the Jones Firm’s argument that this fabricated invoice for a case that had never been tried was sufficient notice to SKG, its associated firms, and the respective partners of those firms that something was amiss.
¶49. Moreover, Richard Scruggs did not act on his own behalf in concocting this bribery scheme but on behalf of all the remaining associated firms in SKG. The testimony by Judge Lackey indicated that the quid pro quo in this scheme was to be an exchange of $40,000 for a ruling from Judge Lackey in favor of SKG’s motion to compel arbitration. This ruling would have been favorable as to all the SKG defendants — not Scruggs alone. “If a tort be committed by one partner while engaged in a transaction within the scope of the partnership business, and such tort be committed in furtherance of the interests of the partnership, it will be liable.” Idom v. Weeks & Russell, 185 Miss. 65, 76-77, 99 So. 761, 763 (1924). This bribery attempt, albeit a fraud upon the court, was committed in furtherance of the interests of all the SKG firms. Had this bribery attempt succeeded with an unscrupulous judge, then presumably SKG stood also to reap the benefit of a favorable ruling in arbitration proceedings against the Jones Firm— retaining all of the disputed profits that perhaps rightly belonged to the Jones Firm and lining all of the pockets of the SKG firms and their respective partners. Surely, if this were the scenario and the bribe had been successful, this Court would not then say the arbitration ruling should stand. In fact, I submit that this Court would unhesitatingly agree that such a judgment must be set aside. Why then are we saying a trial judge abused his discretion in striking an answer and motion — a motion that was accompanied by an attempted fraud upon the court?
¶ 50. The majority relies on the holding in Idom v. Weeks & Russell, 135 Miss. 65, 99 So. 761 (1924), wherein the Court held that Weeks was not liable for his partner Russell’s act of lying in wait within the drug store for burglars and subsequently shooting an innocent passerby. Id. at 764. The Idom holding was premised on the fact that Russell’s lying in wait and disposing of burglars was outside of the scope of the partnership agreement between Weeks and Russell to own and operate a drug store. Id. at 763-64. According to Idom, the shooting constituted an act of “private malice or ill will” on the part of Russell. Id. at 764.
¶ 51. The majority likens Scruggs’s conduct to that depicted in Idom because it was an “unauthorized criminal act” out *379 side of SKG’s ordinary course of business that amounted to “private malice or ill will.” (Maj. Op. at ¶44). The majority neglects to see the mutual benefits in the form of retained profits that would have been bestowed upon the Scruggs firm and the Barrett and Lovelace firms alike had the bribery attempt not been brought to light by an honorable whistle-blower in Judge Lackey. I submit that had Russell been engaging in dispensing medication to a patron without a prescription, albeit a criminal act, then this Court in Idom would have held that there was partnership liability, since Russell’s criminal act would have had a mutual benefit to the partnership in the form of increased revenue. Scruggs’s conduct was to protect all the coffers of SKG — not just his own. After all, the ordinary course of business for lawyers on the most basic level is that lawyers are in the business of winning— arguing for and receiving favorable rulings from trial judges. Such was the intention of Scruggs in the course of his self-confessed criminal act — the $40,000 was to secure a favorable ruling to compel arbitration — a ruling from which each and every SKG firm stood to benefit.
¶ 52. Accordingly, with the utmost respect for my esteemed colleagues in the majority, I must respectfully dissent, because I would not find an abuse of discretion on the part of the trial judge in imputing Scruggs’s criminal conduct to the remaining SKG defendants. I believe that sanctions were properly imposed in today’s case, and I would thus affirm the trial court, in toto.
PIERCE, J., JOINS THIS OPINION IN PART.