R. P. DUNCAN, Appellant, v. W. B. MOORE, Respondent.*

Kansas City Court of Appeals.   May 4, 1925.

1. ASSAULT AND BATTERY: Where Person Has Reasonable Grounds to Believe That Another is About to Assault Him, He Need Not Wait Until Struck, Nor Until Nature and Method of Attack Are Fully Developed. Where a person has reasonable grounds to believe, and does believe, that another is about to assault him, he need not wait until that other has struck, or is actually in the act of assaulting him, or wait until the nature and method of attack are fully developed.

2. ———: Self-Defense: Defendant's Striking Plaintiff, Held Not to Justify Assault on Ground of Self-Defense. Where plaintiff made no demonstration other than opening his mouth as if to say something, defendant's striking plaintiff not to ward off an impending attack, but because plaintiff had called him a liar sometime before, and because he was somewhat afraid of plaintiff, held not to justify assault on ground of self-defense.

3. ———: ———: Testimony That Plaintiff Called Defendant a Liar and Offered to Pay Another to Whip Him, Held Inadmissible Where There Was no Evidence to Support Defendant's Plea of Self-Defense. Testimony that plaintiff, a month before assault, had called defendant a liar, and offered to pay a certain sum to another person to whip defendant, held not admissible, where there was no evidence in support of defendant's plea of self-defense.

4. ———: Where Defendant Assaulted Plaintiff Without Justification, He Was Not Entitled to Damages by Way of Counterclaim Because Plaintiff After Being Assaulted Drew a Pistol. The fact that after plaintiff had been knocked to sidewalk upon getting up, drew a pistol and said to defendant "I will shoot you," held not to entitle defendant upon his counterclaim to damages, as his assault upon plaintiff was without justification.

*Corpus Juris-Cyc. References; Assault and Battery, 5 C. J., p. 635, n. 71; p. 636, n. 75, 81, 83; p. 679, n. 14.

Appeal from the Circuit Court of Gentry County.—
*Hon. John M. Dawson,* Judge.

REVERSED AND REMANDED.

*McCaffrey & Cook* for appellant.

*DuBois & Miller* and *F. P. Stapleton* for respondent.

TRIMBLE, P. J.—Plaintiff, in his petition, alleged that the defendant "did unlawfully, wantonly and maliciously make an assault upon the plaintiff, and did unlawfully and maliciously strike, beat and wound the plaintiff," whereby he suffered certain specified injuries for which he sought $5000 actual and $5000 punitive damages.

The defendant filed an "answer and counterclaim" in which he stated that for answer to the plaintiff's petition he "admits that he struck the plaintiff at the time and place stated in the petition, but the defendant denies that the same was wrongfully, wantonly and maliciously and unlawfully done. Defendant states that the plaintiff first assaulted the defendant at the time and place mentioned in the petition and that the acts alleged in the petition to have been committed by the defendant against the plaintiff were done by the defendant in the necessary defense of his own person and that no more force or means were used than were necessary to repel plaintiff's assault upon the defendant."

For a counterclaim, the defendant alleged that the plaintiff unlawfully, wantonly and maliciously made an assault upon defendant and approached defendant in an angry and hostile manner and put the defendant in great fear of bodily injury to himself; that the defendant struck the plaintiff as hereinbefore alleged in order to protect himself and to defend himself from the aggression of the plaintiff; "that hereafter plaintiff aimed at the defendant a loaded gun, threatened to shoot the defendant, whereby the defendant was in fear of his life; that all of said acts of the plaintiff were done unlawfully, wantonly and maliciously; that by reason of said assault

the defendant suffered great bodily injury; that his entire nervous system was injured and permanently impaired," etc., by reason of which he prayed judgment for compensatory damages in the sum of $5000 and punitive damages in the sum of $5000.

The reply to the answer and counterclaim was a general denial.

Upon a trial, the jury returned a verdict for defendant on plaintiff's petition, and also in favor of defendant for $200 on the latter's counterclaim. The plaintiff has appealed.

Plaintiff was a man nearly sixty years of age and had lived in Stanberry for thirty-five years. The defendant was thirty-six and had lived there for about two years. It seems that he ran an oil filling station in Stanberry at the time of the difficulty, but admitted on the stand that since that occurrence he had sold his business.

On the morning of October 21, 1922, plaintiff Duncan was sweeping off the sidewalk in front of his office in Stanberry, said office being immediately north of and adjoining the pool-hall in said city. Defendant's place of business was some little distance south of the pool-hall.

Plaintiff's testimony is that while sweeping the walk in front of his office he saw defendant some seventy-five or eighty feet down the sidewalk, but lost sight of him and did not know where he went; that in about seven or eight minutes plaintiff started into the pool-hall. The door was open and plaintiff says that just as he went into the doorway, he met defendant and started to go around him when defendant struck him a violent blow on the head, saying, "You will call somebody else a liar, won't you?" (It seems that about a month before this, in the trial of a justice-of-the-peace case wherein Duncan, plaintiff here, was the plaintiff there, and the defendant here was a witness for the defendant in the justice case, Duncan called the defendant herein a "damned liar." This was elicited from plain-

tiff over his objections and exceptions, by defendant as bearing on the latter's plea of self-defense, though at the time of its admission, nothing in the way of self-defense had appeared in evidence.) Plaintiff was knocked out to the sidewalk, his head was cut by the blow and he was bleeding profusely. Plaintiff's evidence is that he did not know defendant was in the pool-room, but just as he entered the pool-hall he saw defendant; that he did not say a word to him and made no demonstration toward him; that defendant struck him with something, an instrument of some kind, just as he, plaintiff, entered the door. He further testified that the bleeding was not able to be checked until about two in the afternoon, and gave evidence as to pain in his head and trouble with his eyes as results of the blow. The doctor who dressed his wound and checked the flow of blood, testified that the wound was caused by some blunt instrument and not with the naked fist, for the wound was not bruised and lacerated such as a fist would produce but was a cut about a third of an inch deep and opened an artery.

Defendant, before testifying to anything tending to show self-defense, testified over the objections and exceptions of plaintiff, to his being called a "damned liar" by the plaintiff at the justice trial and also testified that he had been told by a man named Morris that plaintiff had offered him $50 to whip defendant. Plaintiff, in his testimony, had been asked about this, over his objections, but when these were overruled, he denied having done so but admitted having called defendant a liar at the justice trial. Defendant further testified that on the morning of the difficulty as he was going up the street to the postoffice he saw the plaintiff sweeping off the sidewalk in front of the latter's office and noticed, as he got a little nearer, that "he didn't look natural; he looked mad and angry, and threw his broom across his shoulder;" that defendant walked into the pool-hall, went behind the counter and got a package of chewing-gum, came around and paid the proprietor a nickel and

then turned around and started towards the door; that as he did so plaintiff stepped up in the door and made no effort to step to one side and let defendant out, but stood in the door, "and when I got up near him, he just stuck his face into mine, and I hit him and knocked him back on the sidewalk;" that he, defendant, was, he guessed, not in the pool-hall over two minutes from the time he went in until he came out; that he hit plaintiff with his naked fist and not with any instrument; that when defendant approached the door, plaintiff was standing right in the door and "looked very mad and angry."

Defendant was then asked: "Q. Well, did he do anything when you approached? A. Well, when I got up within possibly a foot of him, something like that, he stuck his face right up in my face and opened his mouth and *looked to me like he started to say something, but I hit him before he said it.*" He further testified that plaintiff's reputation was bad as being a violent, turbulent man.

Defendant further testified that he was thirty-six years old and an able-bodied man at the time; that the fact that Duncan had called him a liar at the justice trial made him afraid of him "to a certain extent" but that the fact somebody told him Duncan had offered his informant $50 to whip him did not make him afraid as he "never thought much about it at the time" but did several times afterward.

He further testified that at the time he struck Duncan he did not know the latter had a pistol in his pocket; that he, defendant, was *back about six or eight feet from the door when he saw plaintiff in the doorway;* that though he had gone in there to keep out of trouble with him, yet when he saw him in the doorway he kept on going up towards him as he "was going out." He admitted that when he hit plaintiff he said, "You will call somebody else a liar, won't you?" and that it was *partly* because plaintiff had called him a liar that he hit him and because he was "somewhat afraid of him."

He was asked: "Q. *He hadn't attacked you, had he?* A. *I didn't give him time to attack me.*
"Q. *He didn't have anything in his hands?* A. *No.*"

Hyatt, the proprietor or man in charge of the pool-hall and the only disinterested eyewitness to the assault and striking of plaintiff, placed on the stand by defendant, testified that defendant came into the pool-hall, got a package of chewing-gum and handed witness a nickel and "started towards the door and just about that time Mr. Duncan came to the door and Ben (defendant) hit him. Duncan was right in the door when Ben hit him." On cross-examination he said the door was open and they met right at the door; that defendant hit him "that quick;" that not a word was said by Duncan to defendant, and witness-didn't remember hearing defendant say what he admits he said to Duncan.

Witness was asked: "Q. You didn't see Duncan make any motions toward him (defendant)? A. *No, sir.*

"Q. You didn't see Duncan *do anything in the world save start through the door?* A. *That is all I saw.*"

According to defendant's own evidence he was six or eight feet from the door when he saw plaintiff in the doorway and that he, defendant, went toward plaintiff and when he got in about a foot of him, plaintiff opened his mouth as if he started to say something, "but I hit him before he said it," defendant saying, as he struck, "You will call somebody else a liar, won't you?" De-- fendant admits that he struck plaintiff *partly* because the latter had called him a liar and because he was some-- what afraid of him. The evidence is that plaintiff had nothing in his hands and made no demonstration toward him of any kind but that all he did was to come into the doorway looking angry and open his mouth as if to say something but the defendant struck him "that quick" and before he could say it, inflicting a wound upon his

head which opened an artery and knocked him out of the door and to the sidewalk. In 2 R. C. L. 549, sec. 27, it is said that "an assault and battery cannot be justified on the ground of self-defense unless the person assaulted had at least *done some overt act or made a hostile demonstration* of a character to give the assailant *reasonable ground* to suppose himself in imminent danger." In 5 C. J. 635, it is said the law governing the right of self-defense is much the same in civil actions for assault and battery as in criminal cases; and that though it is not necessary that one be actually in danger in order to justify an assault on the ground of self-defense, but is justified in repelling an assault by the exercise of such reasonable force as may be, or as appears to him at the time to be, necessary to protect himself from bodily harm, yet his fears of injury must be *reasonable* or *such as a reasonable person would entertain* under the circumstances. In Kelley's Criminal Law (2 Ed.), page 386, sec..585, it is said: "In civil cases there is no excuse for a battery unless it was inevitable; any other matter goes only in mitigation of damages." Also that "if it appear that the party injured assaulted and *offered to strike,* it is sufficient to justify the defendant in striking him to avert the impending blow; he need not wait *in such case* until he has received a blow . . . insulting epithets or opprobrious words will not justify an assault. But words *connected with acts of violence,* may be sufficient to justify an assault by striking the first blow." (Italics ours.) In this case there were no words nor any demonstration made by plaintiff save to open his mouth as if to say something, whereupon defendant struck him. By his own admission defendant was six or eight feet from the door when plaintiff appeared therein, yet defendant approached and struck him before he had time to say anything and without his having done or offered to do anything except to come in the door. There is no evidence that plaintiff offered or made any move to do any-

thing and defendant admits he struck plaintiff partly because the latter had called him a liar some twenty or thirty days before, and partly because he was *somewhat* afraid of him. He admits, however, that after striking plaintiff and felling him to the sidewalk he went down to his oil station, but afterwards came back past plaintiff's office, and says that plaintiff came out with a billiard cue in his hand, "cussing," whereupon he stepped into a garage and, securing an automobile spring, went past the office saying to plaintiff who had gone back into his office and was looking out of the office door, "Come out here and I will show you who is a liar."

It is difficult to find herein any element of self-defense in the circumstances surrounding the striking of plaintiff by defendant. It is true, that where a person has reasonable grounds to believe and does believe that another is about to assault him, he need not wait until that other has struck or is actually in the act of assaulting him or to wait until the nature and method of attack are fully developed. [State v. Bidstrup, 140 S. W. 904, 908.] But in the case cited as in all other cases where this principle is announced, the person thus assaulted is found to be doing something which will reasonably cause, and does so cause the other party to believe that an assault is about to be committed upon him, and, *in order to repel that assault,* he strikes the blow complained of. But in the case at bar plaintiff made no demonstration other than opening his mouth as if to say something; and defendant shows that he struck the blow, not to ward off an impending attack, but because plaintiff had called him a liar sometime before. It is true he says he was "somewhat" afraid of plaintiff, yet at all times throughout the various encounters they had, the idea that plaintiff had called defendant a liar was uppermost in his mind and was the *animating* motive in what he did then and thereafter. In his answer, defendant pleaded that plaintiff *first assaulted him,* but his evidence fails to show this.

Since there was no evidence in support of the plea of self-defense, the testimony as to plaintiff having called defendant a liar and of having offered a man $50 to whip defendant was not admissible. "Evidence that defendant had just cause to believe that plaintiff was about to assault him and *therefor* struck first, is inadmissible to sustain the theory of justification unless proof is first given that there was an overt act of attack and that defendant at the time had reasonable ground to suppose that he was in imminent danger." [5 C. J. 683, sec. 126.]

This brings us to the defendant's counterclaim: This is based on the fact that after plaintiff had been knocked to the sidewalk, he, upon getting up, drew a pistol and said to defendant, "I will shoot you." The evidence offered by defendant shows that Hyatt, the pool man, waited a moment but when he saw plaintiff was not going to shoot, he stepped between the two men, telling plaintiff to "put that thing up and go on up the street," whereupon plaintiff went to his office.

Unless defendant was justified in striking plaintiff on the ground of self-defense, we do not see how that fact that when plaintiff was arising from where he had been felled, drew a pistol which he made no attempt to use, would give rise to a cause of action on defendant's part for an assault on plaintiff's part. Certainly the latter had far better grounds to prepare to defend himself in this way than defendant had to hit plaintiff in the first place. And while it is true, as said in 5 R. C. L. 578, "the defendant in an action arising out of a mutual assault and battery may interpose a counterclaim for the damages suffered by himself as the entire physical encounter may be regarded as one transaction within the meaning of the codes," yet we do not think that defendant, after felling plaintiff as he did and without justification on the ground of self-defense, is entitled to recover damages because plaintiff thereupon drew a pistol.

There was no error in the giving of defendant's instruction No. 2 on the plaintiff's burden of proof on the

cause of action stated in his petition. It is the same as No. 1, given in Orblitt v. Bergfeld, 191 S. W. 998, l. c. 1000, which was approved by the Supreme Court.

We think the judgment should be reversed and the cause remanded both on the cause of action stated in the ˙petition and in the counterclaim. It is so ordered. All concur.                                .   .                          .