Irven Lee MARTIN, III, Plaintiff-Respondent,

v.

Carl J. YEOHAM, Defendant-Appellant.

Irven Lee MARTIN, III, Appellant,

v.

David MARKOWITZ, Respondent.

Nos. 24527, 24526.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Thomas M. Howell, Kansas City, for Irven Lee Martin, III.

George W. Meyer and Roger W. Penner, Meyer, Smith & Penner, Kansas City, for Carl J. Yeoham.

George W. Meyer and Roger W. Penner, Meyer, Smith & Penner, Kansas City, for David Markowitz.

CROSS, Judge.

On July 20, 1963, plaintiff Irven Lee Martin, III received a bullet wound from a revolver fired by defendant Carl J. Yeoham. Thereafter plaintiff filed this action for personal injury damages against three defendants, to-wit: Carl J. Yeoham, his wife, Mary Yeoham, and David Markowitz. Plaintiff undertook to recover damages from defendant Carl J. Yeoham on the ground that he was negligent in firing the weapon and inflicting the wound, and from defendants Mary Yeoham and David Markowitz on the theory they were partners of defendant Carl J. Yeoham as owners and operators of a tavern, and consequently liable for his allegedly negligent acts. Defendants Mary Yeoham and Carl J. Yeoham each filed counterclaims against plaintiff for damages for alleged assault and battery committed upon Mrs. Yeoham by plaintiff. During the course of trial to a jury plaintiff dismissed his action as to defendant Mary Yeoham and the defendant Carl J. Yeoham dismissed his counterclaim against plaintiff.

The jury returned a $10,000.00 verdict for plaintiff against both defendants Carl Yeoham and David Markowitz, and found against Mary Yeoham on her counterclaim against plaintiff. Judgment was rendered accordingly. Thereafter, on motion by defendant Markowitz, the trial court set aside the $10,000.00 verdict and judgment rendered against him and entered judgment in his favor. Separate appeals have been taken by plaintiff and defendant Carl J. Yeoham. Plaintiff appeals from the judgment entered in favor of defendant Markowitz and defendant Yeoham appeals from the $10,000.00 judgment in plaintiff's favor. No appeal has been taken by Mary Yeoham from the adverse judgment on her counterclaim.

Plaintiff's petition contains allegations in substance as follows: that defendants (Carl Yeoham, Mary Yeoham and David Markowitz) were owners and operators of the Sunnyside Tavern at 4343 Troost Avenue in Kansas City, Missouri; that defendants Carl Yeoham and Mary Yeoham were in active charge and control of that business and handled the money; that on or about July 20, 1963, while defendants Carl Yeoham and Mary Yeoham were transporting the partnership business receipts, checks, funds and moneys from the Sunnyside Tavern to their home at 215 E. Linwood, defendant Carl Yeoham "carelessly and negligently discharged a loaded pistol directly in plaintiff's face," thereby directly and proximately causing him bodily injury; that defendant Carl Yeoham was careless and negligent (a) in moving partnership assets in the nighttime over public streets while armed with a deadly weapon; (b) in failing to exercise ordinary care to avoid discharging a deadly weapon at an innocent person at the time and place in question; (c) in failing to exercise ordinary care to ascertain that plaintiff was an "innocent person"; and (d) in "attempting to kill a human being" without first ascertaining his identity; that the negligence of defendant Carl Yeoham was directly attributable to the partnership, and that each member thereof is directly responsible therefor; that the partnership and its members were negligent in permitting Carl Yeoham to transport partnership receipts, funds and moneys, in an automobile over public streets in the nighttime, while possessing a deadly weapon, knowing he was likely to become nervous and discharge such weapon at an innocent person without sufficient cause; and that "said partnership" and each member were negligent in permitting the use of unlicensed firearms in the partnership business in transporting partnership funds over public streets in the nighttime.

Defendants Carl Yeoham and David Markowitz filed a separate joint answer to plaintiff's petition in which they denied generally its allegations, admitted ownership of the Sunnyside Tavern and pleaded

affirmatively to the effect that at the time in question defendant Carl J. Yeoham and his wife Mary were returning to their apartment home at 215 East Linwood Boulevard in their automobile; that upon arrival Mary Yeoham undertook to alight from the automobile, carrying the day's receipts from the tavern and some groceries; that as she started to move from her seat, plaintiff, a young and powerful man and a total stranger, rushed up to the open door of their automobile, suddenly grabbed the clothing and person of Mary Yeoham and violently and repeatedly attempted to pull her from the automobile, thereby committing an assault and battery upon her and putting defendant Carl Yeoham and his wife in great fear of suffering great bodily harm and of being robbed of their property; that while "this assault" was going on other young men approached the Yeoham automobile on the driver's side, also contributing to the fear and apprehension of the Yeohams; that while the alleged assault and battery were being committed and while defendant Carl J. Yeoham was convinced and believed under all attending facts and circumstances that he and his wife were in imminent danger of great bodily harm and of being robbed, defendant Carl J. Yeoham "came to the defense of his wife and himself and fired one shot from a pistol in the direction of the plaintiff for the purpose of repelling the attack being made by the plaintiff and saving his wife and himself from bodily harm and from being robbed of their possessions;" that by reason of the attendant facts and circumstances the firing of the pistol shot was justified and was not an act for which defendants are liable under the law; that any injury suffered by plaintiff was the direct and proximate result of his own negligence in rushing up to and seizing the person of Mary Yeoham and that plaintiff voluntarily assumed the risk of his rash and intemperate conduct.

Inasmuch as plaintiff dismissed his action as to defendant Mary Yeoham during the trial there is no need of reference to her answer to his petition.

There is severe conflict between the evidence of plaintiff and defendants relating to material facts and controlling issues. Plaintiff's version of the events leading up to the shooting is substantially as here set out: On the night in question plaintiff, then a young man 21 years of age, went to the Combo Club, a night spot, located at 6536 Troost. He arrived there at approximately nine o'clock P.M. and remained until one-thirty A.M.—"about four and a half hours." During that time he drank beer and Scotch whiskey, and "danced and just congregated" with other young persons of his acquaintance, both men and women. Plaintiff left the Combo Club as a passenger in a car with four other young men intending to go to a party which was in progress at an apartment located on Warwick and Linwood (near the vicinity of the Yeohams' apartment). The car in which plaintiff rode was a rust colored Ford of somewhat ancient vintage, belonging to and driven by one Bradford. The other three men in the car were Bert Rookhuyzen, Thomas Dye and Bob Chrane. Three additional cars occupied by plaintiff's acquaintances accompanied the Bradford car, making in all a procession of four cars proceeding to the party. At a traffic light approximately two blocks from Warwick and Linwood a Buick automobile in which the Yeohams were riding to their apartment home (as plaintiff later learned) in some manner fell in line with the "chain" of cars en route to the party. Arriving at the vicinity of Warwick and Linwood, these vehicles parked at various places. The Yeoham Buick parked at the entrance of an apartment building immediately in front of two unoccupied and unlighted automobiles previously parked at the south curb of Linwood and the Bradford car parked behind these vehicles, approximately fifty feet from the Yeoham Buick. After some discussion with the other occupants of the Bradford car as to the exact location of the party, plaintiff got out of the car and

"trotted" forward to the Yeoham Buick to inquire of its occupants as to where the party was located. His fellow passenger, Bert Rookhuyzen, also alighted from the Bradford car and followed plaintiff as he proceeded to the Yeoham car. Just as plaintiff reached the Yeoham car, the front door on the passenger's side opened, and a light came on inside. He put one hand on top of the open door, put the other hand on top of the car and bent down to ask the occupants where the party was. He assumed that they were persons going to the party. He denied putting his hands on the woman inside the car and pulling her forward and stated that he didn't get a chance to say anything to "these people". He testified, "I bent down and I didn't get anything out. And as soon as my head went in view all that I remember is a tremendous flash and I fell back staggering." Plaintiff testified at considerable length concerning the nature and extent of his injuries resulting from the gunshot wound. However, our discussion of appeal issues will not require that his testimony in that respect be noted herein.

Bert Rookhuyzen testified that he was following plaintiff to the Yeoham car before the shot was fired. He was about 25 feet behind plaintiff. The witness didn't remember if any one else from the Bradford car was following him at the time but admitted there might have been. He also admitted he had made a statement to the police that "When Irwen Martin jumped out of the car and got about 15 feet down the street I jumped out and followed him and Thomas Dye followed me." Rookhuyzen stated he saw the door to the Yeoham car open as plaintiff came up, saw plaintiff standing between the car and the car door with one hand on the car top and the other hand in the car door and observed him start to bend down. At that time Rookhuyzen heard a shot fired and saw that plaintiff was shot in the face. The witness heard Yeoham tell Mrs. Yeoham to go in and call the police and saw her emerge from the car and go into the apartment house. Yeoham locked the car doors and remained sitting in the car with his gun pointed at Rookhuyzen until the police came.

Thomas Dye testified on behalf of plaintiff as another witness to the shooting. He stated he had been a passenger in the Bradford car and was standing beside it, 50 feet away from plaintiff, when Yeoham fired the shot. When that occurred plaintiff had one hand on the door of Yeoham's car, which was open about a foot and a half, and he had his head down looking inside the car but had not reached into the automobile. On cross-examination the witness testified that "everybody had been drinking" at the Combo Club, that he was "pretty happy" and admitted he had stated in his deposition that he was "tight".

Other witnesses produced by plaintiff testified relative to the activities of plaintiff and his acquaintances at the Combo Club, that there was a party in progress at an apartment occupied by three women in the vicinity of Linwood and Warwick, and that plaintiff and his friends, "about 10 couples", were expected at the party. This testimony is not here set out because we regard it as immaterial to the appeal issues.

Carl Yeoham testified on behalf of defendants in substance, as follows: On and long prior to July 20, 1963, defendants Carl Yeoham and David Markowitz owned the Sunnyside Tavern, located at 44th and Troost, in Kansas City, Missouri. Defendant Markowitz took no part in managing the business. The tavern was operated by Carl Yeoham assisted by his wife, Mary. On the night of July 20th, 1963, Yeoham closed the tavern at about 1:30 A.M., got into his car with Mrs. Yeoham, and started home with the day's receipts consisting of cash and checks. He drove the automobile to his apartment at 215 East Linwood Boulevard, and stopped and parked in front of it, as he usually did. He saw no persons on Linwood and there were no cars close to where he stopped and parked. Mrs. Yeoham, carrying groceries and the day's re-

ceipts in a sack, opened the door to get out to go up to the apartment and as she did so "some man" (later identified as plaintiff) suddenly appeared and grabbed her around the neck and shoulders and yanked on her and tried to pull her out of the car. Yeoham tried to pull his wife back in the car, but the man still "had a hold of her" and then Yeoham reached for his revolver which he customarily carried in the seat of the car. As he did so, he heard footsteps of persons running up to the driver's side of the car and he got a glimpse of them out of the corner of his eye. There were more than one, a "couple" or "several" men. During this time the man who had grabbed his wife had said nothing. Yeoham thought that "he would drag her out of the car and beat her and kick her and maybe kidnap her and also the same to me. I thought that he would pull me out of the car or beat me or kidnap me. I didn't know." In that state of mind Yeoham fired one shot in the direction of plaintiff, "to stop him." When the shot was fired plaintiff had Mrs. Yeoham around the neck and his head was in the door of the car. The bullet struck him in the face. Yeoham said, "I was not particularly shooting at his face. I was just firing the gun to stop him."; that he fired the shot "To protect my wife and myself from harm * * * maybe beat up, kicked. I had to stop it, and the only way that I had to stop it was by firing the gun. * * * The car was surrounded, and they had her * * * part way out of the car, and I couldn't drive off. There was no place to go." Asked on cross-examination whether he thought that he was going to be robbed Yeoham answered, "I was not thinking too much about robbery at that time. I was thinking about the safety of my wife and to myself. At the time I gave the money no thought—I didn't intend for me to be harmed or for my wife to be harmed." Immediately after the shot was fired, and at her husband's direction, Mrs. Yeoham got out of the car— still carrying the groceries and tavern receipts—ran up to her apartment and called the police. Yeoham locked the car doors and stayed in the car holding his revolver until the police came. The men who had come up on the driver's side ran on down the street when the shot was fired but soon returned. Two of them followed Mrs. Yeoham into the apartment. Altogether there were four other than plaintiff, namely, the previously referred to Bradford, Rookhuyzen, Chrane and Dye. They were belligerent, dressed casually and slovenly in appearance. At the time of the incident Yeoham was 59 years old, had a crippled leg and was not in good health. His testimony as to the shooting and circumstances surrounding it were corroborated by Mrs. Yeoham whose testimony in those particulars was essentially the same as her husband's.

Robert Edwards, a police officer on patrol duty with another officer, testified he arrived at the scene of the shooting within two or three minutes after it happened. Plaintiff was lying on the sidewalk. Yeoham was in the car with the doors closed. He was quiet and cooperative and appeared to be scared. Four young men—Dye, Rookhuyzen, Chrane and Bradford—were around the car. They were taken to the police station for questioning. The officer testified that they had been drinking, that their clothing was mussed and that the police had trouble with a couple of them. The rust colored Ford (the Bradford car) was not found parked at the curb. "It was not at the street at all." It was in the driveway of a house located west beyond the Yeoham apartment near the back of the backyard in the rear of the house.

Plaintiff's verdict directing instruction (No. 2) reads as follows:

"Your verdict must be for plaintiff Irven Lee Martin, III, and against defendant Carl J. Yeoham on plaintiff's claim for damages, if you believe:

First, that defendant Carl J. Yeoham discharged a loaded pistol in the direction of plaintiff, and

Second, that defendant Carl J. Yeoham was thereby negligent, and

Third, that as a direct result of such negligence plaintiff Irven Lee Martin, III, sustained damage.

You are further instructed that your verdict must be for plaintiff Irven Lee Martin, III, and against defendants Carl J. Yeoham and David Markowitz, if you believe the matters above set out and, if you believe:

Fourth, that the defendant Carl J. Yeoham was so acting in the ordinary course of the business of the Sunnyside Tavern partnership.

Unless you believe that the plaintiff Irven Lee Martin, III, is not entitled to recover from either defendant by reason of Instructions numbered 5 or 6.

(Given) RHK J MAI 17.01 Mod. Offered by plaintiff."

On behalf of defendants the court gave Instruction No. 4 conversing the issue of negligence and. additionally Instructions No. 5 and 6 submitting the affirmative defenses of contributory negligence and justification (defense of himself and his wife) as follows:

## "INSTRUCTION NO. 5

Your verdict must be for defendants on plaintiff's claim for damages if you believe:

FIRST, that plaintiff Irven Lee Martin, III, appeared suddenly and without warning, confronted Carl Yeoham and Mary Yeoham and caused them to be apprehensive of imminent great bodily harm; and

SECOND, the plaintiff's conduct, as submitted in Paragraph First, was negligent; and

THIRD, such negligence of the plaintiff directly caused or directly contributed to cause the injuries and damages plaintiff may have sustained.

(Given) RHK J MAI 28.01 Modified. Offered by defendants."

## "INSTRUCTION NO. 6

Your verdict must be for defendants if you believe:

FIRST: Defendant Carl Yeoham had reasonable cause to apprehend and did apprehend bodily harm to his wife and himself, either or both, and

SECOND: Defendant Carl J. Yeoham did not create the situation which caused the apprehension of the defendant Carl J. Yeoham, and

THIRD: The act of the defendant Carl J. Yeoham in discharging a pistol at the plaintiff was in defense against this apprehended bodily harm, and

FOURTH: That defendant Carl J. Yeoham used only such force as was reasonable and necessary.

(Given RHK MAI 28.07. Offered by defendants." .

Our attention is directed first to the appeal of defendant Carl Yeoham from the judgment rendered against him. At the outset, on our own initative, and independently of considerations raised by assignments of error, we find that plaintiff's theory of the case as pleaded is misconceived and that its submission to the jury was fundamentally erroneous. Despite the fact that the evidence overwhelmingly establishes that Yeoham's act in firing the shot at plaintiff was *intentional,* plaintiff undertook to recover on the basis that the act was *negligent.* This is not permissible under the law as it is generally recognized and as it is applied in Missouri.

■ It is elementary that the words "negligence" and "intentional" are contradictory and that "negligence" is not synonymous with "intentional action". 65 C.J. S. Negligence 1(7), p. 451 (citing Gibeline v. Smith, 106 Mo.App. 545, 80 S.W. 961). (See 65A C.J.S. Negligence § 131 p. 110). In Raming v. Metropolitan Street Railway Company, 157 Mo. 477, 57 S.W. 268, a leading and frequently cited case, the Supreme

Court, en banc, pointed out the clear distinction between negligence and willful acts, and declared, "If the act complained of is intentional the question of negligence does not arise. If the act be intentional, it becomes fraudulent or criminal, or it may be a trespass." To the same effect is the holding in Jacobson v. St. Louis Transit Co., 106 Mo.App. 339, 80 S.W. 309, where the court, relying upon the Raming case, observed that "negligent and deliberate injuries could not coexist." In Boyd v. St. Louis Transit Co., 108 Mo.App. 303, 83 S.W. 287, the court said: "* * * Testimony tending to sustain the charge of negligence and carelessness would negative and disprove willfulness or intentionality, and proof that the wrongdoing on the part of defendant was deliberate would exclude negligence, and contributory negligence would be no defense available to defendant for injury wantonly committed." And, in Cramer v. Springfield Traction Co., 112 Mo.App. 350, 87 S.W. 24, this court said: "An act cannot be both careless and willful. Negligence is an unintentional act or omission. Willfulness is intentional—an act purposely done, not negligently or carelessly done or left undone; hence, as held by Judge Sherwood in the Raming case, evidence to prove negligence would negative willfulness, *and vice versa."* (Our emphasis.)

In McLaughlin v. Marlatt, 296 Mo. 656, 246 S.W. 548, the Supreme Court has clearly distinguished between the right of action for injury caused by an intentional shooting and that arising from an unintentional, negligent shooting. We quote: "Where one person is injured by the discharge of a firearm in the hands of another, he may have an action for assault and battery, if the shooting was intentional; or he may have an action for negligent injury, if the shooting was unintentional and the result of negligence. But the cause of action in the one case is different from that in the other, and both cannot arise on the same state of facts. * * * In an action for personal injuries intentionally inflicted with a firearm, and in one for such an injury unintentionally but negligently inflicted, the plaintiff seeks a recovery for an invasion of the same primary right; but the defendant's delict in the one case is different from that in the other. As to that different elements of proof are required in the two actions, and the consequences to defendant, as measured by the recoverable damages, are different. Allegations of facts constituting a cause of action for personal injury willfully inflicted will not, therefore, be supported by proof of an injury negligently committed. Heizer v. Mfg. Co., 110 Mo. 605, 617, 19 S.W. 630, 15 L.R.A. 821, 33 Am.St.Rep. 482; Bindbeutal v. Railway, 43 Mo.App. 463, 470; Birmingham Mineral R. Co. v. Jacobs, 92 Ala. 187, 9 South 320, 12 L.R.A. 830.

"In the instant case, the petition, while it does not expressly allege an assault, can only be construed as charging an intentional shooting of plaintiff by defendant. And the pleadings as a whole exhibit the queer anomaly of contributory negligence being pleaded as a defense to an action for assault and battery. Such confusion can be avoided by requiring plaintiff in actions of this character to state the facts constituting the cause of action upon which he relies. Conway v. Reed, supra, [66 Mo. 346] should no longer be followed. While a number of our cases hold that, where negligence is clearly charged in the petition, the use of the word 'willfully' as a mere rhetorical flourish will not effect a change of the cause of action, Conway v. Reed is the only one that goes to the extent of holding that a charge of assault and battery is sustained by proof of an injury negligently inflicted."

It is apparent that in ruling McLaughlin v. Marlatt our Supreme Court has followed and applied the rule that an act cannot be both careless and willful. The decision is clear authority for the proposition that proof of an injury negligently inflicted will not support a petition alleging that the injury for which relief is sought

was *willfully or intentionally* inflicted. Under the same reasoning and in the interest of consistency it also must be held that proof of a willful act resulting in bodily harm, to-wit, the intentional shooting and wounding of another person, will not justify or support jury submission of the case on a hypothesis that the injury for which recovery is sought was the result of an act of negligence. This holding accords with the basic rule, supported by Missouri cases of almost countless number, that an instruction should never submit an issue which is not supported by the evidence. 27 Mo.Dig., Trial, ▮

If plaintiff had originally pleaded a cause of action founded on allegations to the effect that defendant Yeoham had caused him bodily harm by intentionally shooting and wounding him, or had amended his petition to conform with the evidence which established those facts, he would have been entitled to a submission of such an alleged cause of action in accordance with instructions formulated by the MAI committee and promulgated by the Supreme Court. As bearing on the choice of MAI instructions appropriate for such submission, we look to legal aspects of such acts as are involved in this case and the views held by the MAI Committee in respect thereto.

▮ As earlier appears, it was said in McLaughlin v. Marlatt, supra, that "Where one person is injured by the discharge of a firearm in the hands of another, he may have an action for assault and battery, if the shooting was intentional." This statement, although correct, oversimplifies the question at hand. Technically an assault is distinguishable from a battery. In Adler v. Ewing, Mo.App., 347 S.W.2d 396, the court makes the distinction by stating that "generally speaking an assault * * * is merely an unlawful attempt or offer to use force to the injury of another," and that a battery is "the actual unlawful use or commission of such violence." The same

authority recognizes that every battery includes an assault, citing 6 C.J.S. Assault and Battery § 1(b), 796. "Battery" is defined in 6 Am.Jur.2d, Assault and Battery, Sec. 5, p. 10, as follows: "A battery is the unlawful touching or striking of the person of another by the aggressor himself or by any other substance put in motion by him, done with the intention of bringing about a harmful or offensive contact or apprehension thereof which is not legally consented to by the other and not otherwise privileged." The foregoing is essentially the same concept of a battery as is expressed in the American Law Institute's Restatement of the Law of Torts, Sec. 13. With respect to "Battery; Harmful Contact" the Restatement states as follows: "An act which, directly or indirectly, is the legal cause of a harmful contact with another's person makes the actor liable to the other, if (a) the act is done with the intention of bringing about a harmful or offensive contact or an apprehension thereof to the other or a third person, and (b) the contact is not consented to by the other or the other's consent thereto is procured by fraud or duress, and (c) the contact is not otherwise privileged." The legal principles embodied in the foregoing Restatement expression have been embraced by the MAI Committee and incorporated in the instructions it has drafted for use in battery tort actions. See the Committee's Comment in Notes on Use following MAI form No. 23.02 entitled, "Verdict Directing—Battery—Intent to Harm." p. 117. Hence the Restatement definition of battery may be considered as having been incorporated into the body of Missouri tort law.

▮ The MAI Committee has prescribed MAI form No. 23.02 for use in actions founded on a battery allegedly committed by unlawfully striking or touching the person of another with intent to effect a harmful or offensive contact. It is in all respects applicable to the submissible issues of liability in this case and consistent with

Missouri law pertaining thereto. The form reads as follows:

"23.02 Verdict Directing—Battery—Intent to Harm

Your verdict must be for plaintiff if you believe:

First, defendant intentionally (here describe act such as 'struck') plaintiff, and

Second, defendant thereby caused plaintiff bodily harm.

(Second, defendant thereby caused a contract with plaintiff which was offensive to plaintiff, and

Third, such contact would be offensive to the sense of personal dignity of a reasonable person) [1]

*[unless you believe that plaintiff is not entitled to recover by reason of Instruction No.——(here insert number of affirmative defense instruction)].

Notes on Use

1. Alternate paragraph 'Second' and paragraph 'Third' are to be used when there was an offensive contact but no bodily harm."

* Add if affirmative defense is in issue.

It is the basic theory underlying the use of MAI that when an approved instruction is applicable it must be given to the exclusion of any other instruction. Unless this tenet is observed, the MAI procedure cannot be successful. The rejection of MAI 23.02 as plaintiff's verdict directing instruction and the giving of Instruction No. 2 in its stead constituted error. Civil Rule 70.01(b), V.A.M.R. Peak v. W. T. Grant Company, Mo.Sup., 409 S.W.2d 58; Hawkeye-Security Ins. Co. v. Thomas Grain Fum. Co., Mo.App., 407 S.W.2d 622; Barkley v. Mitchell, Mo.App., 411 S.W.2d 817; Sweatman v. McClure, Mo.App., 416 S.W.2d 665.

▬ Furthermore, we are convinced that such error was prejudicial because Instruction No. 2 presented false issues extraneous to the case. The question of defendant's negligence as submitted by the instruction was not responsive to the proof, hence immaterial to the jury's decision, and it should not have been laid before them. The impropriety was repeated by the giving of defendant's instruction conversing the negligence hypothesized by Instruction No. 2. Likewise, Instruction No. 2 invited and gave rise to still another instruction submitting an issue entirely foreign to the case, to-wit: Instruction No. 5, which hypothesized contributory negligence on the part of plaintiff. "* * * (T)he doctrine of contributory negligence has no application in an action for assault and battery." 6 C.J.S. Assault and Battery § 11, p. 804.[1] The interposition of these immaterial and false issues could not have failed to confuse and perplex the jury in their deliberation upon their verdict, to the prejudice of defendants. For this cause the judgment must be reversed and the case retried.

Defendant Carl Yeoham's brief contains three points. Discussion of the questions raised thereby is not essential to our disposition of the appeal and our comment thereon is made only as a guide to the court and counsel upon retrial. Yeoham's first point is a complaint that plaintiff and a juror were guilty of improper conduct during the trial. Even if the matters complained of in fact occurred, our present determination would not be affected by such considerations. It is not likely that the alleged incidents would occur when the case is tried again.

Points two and three made by defendant Yeoham are argued together and as a single assignment. He insists it was error for the trial court to admit evidence that plaintiff's purpose in running up to the Yeoham

1. This rule is followed by numerous Missouri decisions which include Raming v. Metropolitan Street Railway, 157 Mo. 477, 57 S.W. 268; Cramer v. Springfield Traction Co., 112 Mo.App. 350, 87 S.W. 24; Boyd v. St. Louis Transit Co., 108 Mo.App. 303, 83 S.W. 287; Jacobson v. St. Louis Transit Co., 106 Mo.App. 339, 80 S.W. 309.

car was to inquire of its occupants the location of a party, and contends that the trial court erred in refusing to give a tendered withdrawal instruction which would have told the jury that "in determining whether or not the defendant Yeoham had reasonable cause to apprehend that his wife or himself were in danger of bodily harm at the time of the occurrence in evidence" they would wholly disregard "all evidence as to why or for what purpose the plaintiff was at the scene." Yeoham argues that the issue of whether he had reasonable cause to and did apprehend that he or his wife was in danger of bodily harm, as submitted in Instruction No. 6, should be determined by the jury on a consideration of the facts *as they appeared to Yeoham himself* at the time he fired the shot and that plaintiff's explanation of "why or for what purpose he was at the scene" had nothing to do with the question. Plaintiff submits conversely that evidence he was en route to a party was relevant to explain his presence in the vicinity at the time of the shooting, and that "the intent in plaintiff's mind as he approached the Yeoham vehicle was also competent evidence to be weighed by the jury."

In Davenport v. Silvey, 265 Mo. 543, 178 S.W. 168, the Supreme Court delineated the right of self-defense as follows: "In actions for assault self-defense is a good defense to the action. Self-defense has a well-defined meaning in the law. In such case the party has a right to act upon appearance. If he believes, and has good reason to believe, that he is in danger of suffering serious bodily injuries at the hands of the other party he has a right to act in self-defense, using such force only as is necessary to repel the threatened attack." Earlier, in State v. Bidstrup, 237 Mo. 273, 140 S.W. 904, the Supreme Court said the following: "While self-defense is a law of necessity, yet, if a person has a reasonable cause to apprehend immediate danger of death or great personal injury, he has a right to use force *as appears to him* to be reasonably necessary to protect himself against such impending danger." (Emphasis supplied.) In Duncan v. Moore, 219 Mo.App. 374, 271 S.W. 847, this court wrote as follows: "In 5 C.J. 635, it is said the law governing the right of self-defense is much the same in civil actions for assault and battery as in criminal cases; and that though it is not necessary that one be actually in danger in order to justify an assault on the ground of self-defense, but is justified in repelling an assault by the exercise of such reasonable force as may be, *or as appears to him* at the time to be, necessary to protect himself from bodily harm, yet his fears of injury must be reasonable or such as a reasonable person would entertain under the circumstances." (Our italics.) Also see Spidell v. Tilghmon, Mo.App., 40 S.W.2d 719, where it is stated that the right of self-defense is not limited to an attack actually made by the other party, but that *the law permits a party to act upon appearances.* The foregoing Missouri authority is consistent with the rule stated in 6 Am.Jur. 2d Assault and Battery, Section 161, p. 135, quoted as follows: "In a civil action for assault, the defendant's belief that the plaintiff intended to do him bodily harm cannot support a plea of self-defense unless it was such a belief as a reasonable person of average prudence would have entertained under similar circumstances.[2] It is not necessary that the danger which gave rise to the belief actually existed; it is sufficient that the person resorting to self-defense at the time involved reasonably believed in the existence of such a danger,[3] and such reasonable belief is sufficient even where it is mistaken. In forming such reasonable belief a person may act upon appearances.[4] In other words, it is sufficient that the danger was reasonably apparent."[5]

2. Citing Duncan v. Moore, 219 Mo.App. 374, 271 S.W. 847.

3. Citing Duncan v. Moore, 219 Mo.App. 374, 271 S.W. 847.

4. Citing Davenport v. Silvey, 265 Mo. 543, 178 S.W. 168.

5. The conditions under which a person may defend a third person and the means

■ Under all the foregoing authority there can be no doubt that the question whether defendant Yeoham had reasonable cause to and did apprehend that he or his wife was in danger of bodily harm should have been resolved by the jury *solely on the facts and circumstances as they appeared to the defendant Yeoham* at the time he fired the shot. When the law speaks of "appearances", it means appearances from the standpoint of the person who claims to have acted in self-defense. In the case of Bell v. State, 20 Tex.App. 450, the court reasoned as follows:

"But to whom must the appearance of danger,—the *apprehension* of the party killing,—*reasonably* appear? To the jury after hearing all the evidence,—after ascertaining the *real* facts, 'a great many of which might not, could not, and doubtless were not known to defendant at the time of the killing?' Or, must the real or apparent danger appear to *defendant* at the time of the homicide to be reasonable? We think the latter is correct. The jury must view the facts upon his standpoint. Each juror must place himself in the position of the defendant at the time of the homicide, and determine from all the facts, as they appeared to defendant at the time of the killing, whether his apprehension or fear of death or serious bodily harm was reasonable; and if so, they should acquit. For, says Mr. Wharton, whether the danger is apparent is to be determined from the defendant's standpoint."

This rule was followed in Ater v. Ellis, Tex. Civ.App., 227 S.W. 222, Patterson v. Kuntz, La.App., 28 So.2d 278 and Smith v. Delery, La.App., 98 So.2d 899, all of which were cases where the plaintiff sought damages for an allegedly tortious shooting and the issue arose whether or not plaintiff was under a reasonable apprehension of bodily harm. In each instance the court held it was immaterial for what purpose and with what intent the plaintiff was at the place where he was shot by the defendant.

■ In this case the jury should not have been permitted to consider "why or for what purpose plaintiff was at the scene" in resolving the issue of justification. The reasons and purposes that induced plaintiff to accost the Yeohams were abstractions lodged within the recesses of his own mind. Those factors were invisible to Yeoham, were not otherwise susceptible of sensory perception, were never communicated to him and never came within his notice or knowledge. Hence, they constituted no part of the "appearances" observable by him at the time in question. Regardless of whether such evidence might have been relevant to other issues, the trial court's refusal to withdraw it from the jury's consideration on the issue raised by Instruction No. 6 erroneously permitted the jury to view the determinative facts and circumstances through the eyes of plaintiff instead of from Yeoham's viewpoint. The error should not be repeated when the case is tried again. "The rule is recognized and established by many decisions of this court

that may be employed for that purpose are outlined in Restatement, Second, Torts, Sec. 76, as follows: "The actor is privileged to defend a third person from a harmful or offensive contact or other invasion of his interests of personality under the same conditions and by the same means as those under and by which he is privileged to defend himself if the actor correctly or reasonably believes that (a) the circumstances are such as to give the third person a privilege of self-defense, and (b) his intervention is necessary for the protection of the third person." The foregoing rule

is quoted and approved in Hartley v. Oidtman, Mo.App., 410 S.W.2d 537, together with the text of the reporter's notes to the effect that while originally the privilege to intervene on behalf of third persons was restricted to members of the actor's family or household, such restriction has been abandoned, and that, as stated in Salmond, Torts, (11th Ed. 1953) 375: "It may safely be assumed that at the present day all such distinctions are obsolete, and that every man has the right of defending any man by reasonable force against unlawful force."

that where evidence is admissible for one purpose or one issue but would be improper for other purposes and upon other issues in the case, it should be received. The opponent then has a right to an instruction if he should request it limiting the extent to which and the purpose for which the jury may consider such evidence." State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W.2d 58 1. c. 61. The quoted rule was followed in Ferril v. Kansas City Life Ins. Co., 345 Mo. 777, 137 S.W. 2d 577; Service Construction Co. v. Nichols, Mo.App., 378 S.W.2d 283; O'Leary v. Illinois Terminal Ry. Co., Mo.App., 288 S.W.2d 393 and Scott v. Missouri Insurance Co., 361 Mo. 51, 233 S.W.2d 660.

We express an additional note of caution directed to the court and counsel participating in another trial. There is error in Instruction No. 6 which submitted the "self-defense" issue. Although the instruction was patterned after the appropriate MAI form, namely, MAI 28.07 entitled "Affirmative Defense—Battery Actions—Self Defense", it has not been properly modified in accordance with substantive law on the subject. The instruction tells the jury (among other things) that their verdict must be for defendant if they believe "FIRST: Defendant Carl Yeoham had reasonable cause to apprehend and did apprehend bodily harm to his wife and himself, either or both, and * * *". In that respect the instruction is a misdirection of law. Under Missouri decisions the existence of reasonable cause for apprehension of *mere bodily injury* is not sufficient to justify a shooting in self-defense. There must be reasonable cause of apprehension of imminent danger of death or *great bodily harm*. In Daggs v. St. Louis-San Francisco Ry. Co., 326 Mo. 555, 31 S.W.2d 769, an action for assault and battery by shooting, the jury were instructed that if they found the defendant believed he was in imminent danger of "bodily harm" and shot plaintiff in self-defense, their verdict should be for defendant. On appeal the Supreme Court ruled, "By this instruction the court directed the jury on the issue of self-defense. The instruction did not require a finding that there was a reasonable cause for Pyeatt to believe that he was in imminent danger of death or *great bodily harm*. For this reason it is erroneous. State v. Bidstrup, 237 Mo. 273, loc. cit. 288, 140 S.W. 904; State v. Banks, 258 Mo. 479, loc. cit. 492, 167 S.W. 505; State v. Roberts, 294 Mo. 284, 242 S.W. 669, loc. cit. 674." (Italics added.) Also see Restatement, Torts, Sec. 65.

We next direct attention to plaintiff's appeal from the judgment entered in favor of defendant Markowitz by the trial court after setting aside the verdict and judgment in plaintiff's favor. The reasons for that action are stated in the court's order as follows: "The court finds as a matter of law that plaintiff's evidence fails to show that defendant, Carl J. Yeoham, was in any manner acting as an agent or servant of the defendant Markowitz or any partnership between him and David Markowitz."

Plaintiff's first point is that the trial court erred in setting aside the verdict and judgment in his favor and against defendant Markowitz "because defendant Carl J. Yeoham was acting in the ordinary course and scope of the business of the tavern partnership, when he negligently shot plaintiff." We accept the point as a suggestion that there was sufficient evidence to support a finding by the jury that the shooting of plaintiff by Yeoham was a tortious act committed in the ordinary course of the partnership business of such a nature that liability therefor would be imputed to the partnership itself and to Markowitz, the other partner. Preliminarily, we examine the principles of law governing the question.

As a legal entity a partnership ordinarily acts through its individual members. Each partner acts as a principle for himself and as an agent for the firm and for his copartners in respect of partnership matters. 65 C.J.S. Partnership § 136, page 571. Arado v. Keitel, 353 Mo. 223, 182 S.W. 2d 176. The law of partnership is regarded as a branch of the law of agency, from

which derive the principles on which a partner acts for and binds his copartners in dealings with third persons. 40 Am.Jur. Partnership, Sec. 136, p. 224. Generally speaking, and on the principles of mutual agency, the partnership, and each member, is liable for torts committed by one of the members acting in the scope of the firm business, although they do not participate in, ratify, or have knowledge of such torts. "The test of the liability is based on a determination of the question whether the wrong was committed in behalf of and within the reasonable scope of the business of the partnership. If it was so committed the partners are liable as joint tort-feasors." * * * "A necessary foundation for the liability of partners or the partnership for the tortious act of a copartner is that the act shall be performed in the line of the copartnership business, and if the injury results from a wanton or wilful act of one of the parties committed outside the agency or common business, then the person doing the act and causing the injury is alone responsible, unless the act which constituted the tort was authorized by the members of the partnership or subsequently ratified by them, the act itself having been done in their behalf and interest." 40 Am.Jur. Partnership, Sec. 190, p. 262.[6] With respect to whether the commission of a wilful tort, such as an assault and battery, by one partner will create liability against the partnership, or copartners, it is stated by 68 C.J.S. Partnership § 168, page 618, that "the true test is not the illegality or the malicious and willful character of the wrong, but whether it was done within the scope of the wrongdoing partner's authority; and such determination must necessarily rest on the facts of the particular case." The same authority further states, "Accordingly, where one partner commits a willful and malicious tort not within the scope of the agency or the common business of the partnership, to which the other members have not consented, and which has not been ratified, they are not liable for harm thereby caused."[7]

The general law applicable to partnership was supplemented in 1949 by the enactment of Chapter 358, V.A.M.S. (Mo.R.S. 1959) entitled "Uniform Partnership Law" which is essentially a codification of the substantive law of partnership. Section 358.130 reads as follows: "Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act." We consider the quoted provisions to be expressive of the common law as it pertains to partnership liability arising from the wrongful acts of an individual partner.

The Missouri case of Mehlstaub v. Michael, 221 Mo.App. 807, 287 S.W. 1079, was decided by this court under principles of partnership law we have heretofore noted. In that case a father and a son owned a grocery store as partners. The son committed an assault and battery on the plaintiff in an effort to eject him from the store as an undesirable person. The father was present but did not interfere to prevent the "assault" until after plaintiff had been ejected and received the injuries of which he complained. Under those facts we ruled that the evidence was sufficient to go to the jury on the question as to whether the assault was committed in furtherance of the partnership business and for its benefit and we declined to disturb a verdict and judgment rendered against both defendant partners. In so ruling the opinion stated: "There is no question but that all partners

6. Also see Anno Liability for Assault by Partnership, 40 A.L.R. 677; Anno Liability for Assault by partner or joint adventurer, 30 A.L.R.2d 859; Cooley on Torts, Section 88, page 289; Idom v. Weeks & Russel, 135 Miss. 65, 99 So. 761, 40 A.L.R. 668 and Vrabel v. Acri, 156 Ohio St. 467, 103 N.E.2d 564.

7. Citing Schloss v. Silverman (Mfd.) 192 A. 343, a leading case.

are liable for a wrong committed by one of them while he is acting in the .ordinary course of the firm's business. 30 Cyc. 523. The liability of the partnership for a wrong committed by one of its members is based upon the theory of agency. Locatelli v. Flesher, supra [Mo.App., 276 S.W. 415]."

Plaintiff concedes that no liability would accrue against the partnership if Yeoham fired the weapon for the sole purpose of defending himself or his wife from bodily harm reasonably apprehended and further concedes there was evidence to support such a finding. However, says plaintiff, certain admissions contained in the joint answer of defendants Yeoham and Markowitz constitute evidence from which the jury could reasonably believe that Yeoham fired the weapon either (1) to protect the partnership property or (2) to protect himself and his wife from apprehended bodily harm *and* to protect the partnership property. Plaintiff insists that either belief would support a jury finding that in firing the shot Yeoham was "acting in the ordinary course of the business of the Sunnyside Tavern partnership" as hypothesized in Instruction No. 2. As constituting such admissions, plaintiff points 'to the allegation in the joint answer to the effect that when the Yeohams arrived in front of their apartment Mary Yeoham opened the door of their automobile preparatory to alighting therefrom *"having in her arms the cash and checks which constituted the days receipts of the Sunnyside Tavern * * ** and some groceries"; the allegation that as Mrs. Yeoham started to move from her seat in the automobile plaintiff rushed up to open the car door, attempted to pull her from the automobile, thereby committed an assault and battery upon her and "put defendant Yeoham and his wife in great, sudden and imminent fear of suffering great bodily harm *and of being robbed of the property in their custody"*; and, the allegation that "The said Carl J. Yeoham, came to the defense of his wife and himself and fired one shot from a pistol in the direction of the plaintiff for the purpose of repelling the attack being made by the plaintiff and saving his wife and himself from bodily harm *and from being robbed of their possessions."* (Italics supplied.)

It is futile for plaintiff to argue that the presence of the quoted language in the joint answer made a submissible issue on the question of whether a battery was committed in futherance of the partnership business. Assuming (only for the purpose of argument) that those averments might have had evidentiary bearing on the question, and might have been put before the jury if proper tender had been made for their reception in evidence, the clear fact remains that plaintiff did not offer the so-called admissions in evidence during the trial, and they are not any part of the evidence that was heard by the triers of fact in this case—the jury. In testing the legal propriety of the trial court's action setting aside the judgment for plaintiff and entering judgment in favor of defendant Markowitz, we should not and do not consider potential evidence which was not offered at trial for the jury's consideration. In this respect we follow the well established rule that "admissions in pleadings cannot be regarded as evidence unless the pleadings are introduced at the trial at the proper time and in the proper way." Lammers v. Greulich, Mo.Sup., 262 S.W. 2d 861, citing 31 C.J.S. Evidence § 372, Note 15, page 1156; 20 Am.Jur. 534, Sec. 631; 14 A.L.R. 22, Anno-Evidence-Admissions in Pleadings loc. cit. 89.

Nor does the record .disclose other facts and circumstances sufficient to form a substantial evidentiary basis for a jury finding that Yeoham fired the shot in furtherance of the partnership business and for its benefit—as opposed to his unequivocally expressed reason for his action—that he fired the weapon as a measure to save his wife and himself from serious bodily harm. In so holding we recognize the rule that probative facts necessary to sustain a recovery may be established by circumstantial evidence, which need not have the quality of absolute certainty. However, the

circumstances relied upon must point to the desired conclusion with such degree of certainty as to make that conclusion the more reasonable and probable of the conclusions to be drawn, and must rise above the stature of guesswork, speculation or surmise; and such evidence should have a tendency to exclude every reasonable conclusion other than the one desired. 12 A Mo. Digest, Evidence, ⟠587, 595. The circumstances herein relied upon by plaintiff fall short of those requirements. Only by speculation and surmise could the jury have concluded that Yeoham fired his weapon at plaintiff to preserve the partnership property, and that he was not impelled to that action by the primary and overwhelmingly more powerful instinct to protect the well-being of his wife and himself, particularly in view of all the surrounding circumstances shown by the evidence, previously narrated, reasonably tending to cause him great apprehension that either or both of them might suffer great bodily harm.

Plaintiff's second point also charges the trial court with error in setting aside the verdict and judgment in his favor against defendant Markowitz, but on a different ground, to-wit: that defendant Yeoham was acting "with the authority" of Markowitz when he fired the shot at plaintiff. Apparently the foregoing is intended to postulate that there was substantial evidence before the jury from which they could reasonably have found that Yeoham was acting "with the authority" of copartner Markowitz when he shot the plaintiff. By so contending plaintiff undertakes to invoke the legal principle, as it is declared in Section 358.130 V.A.M.S., previously quoted, that liability for a wrongful act committed by a partner will be extended to the partnership when it is done "with the authority of his co-partner(s)." In support of this proposition plaintiff again points to the previously quoted allegations contained in the joint answer and makes the claim that those averments constitute "admissions" that Yeoham was acting with the authority of Markowitz at the time in question and were evidence in

the case from which the jury could so find. Our previous ruling that the allegations of the joint answer were not introduced as evidence in the case disposes of this phase of plaintiff's argument.

Plaintiff's argument that Yeoham "was acting with the authority of his co-partner David Markowitz" is not undertaken to convince us that the "authority" in question franchised Yeoham to commit the specific act involved—the shooting. Plaintiff undertakes only to demonstrate that there is evidence to show there was "authority given Yeoham by Markowitz to carry the receipts home with a deadly weapon." There is no evidence in the record to establish even that state of affairs. The only direct evidence on that question is the testimony of Markowitz, given by way of deposition, and is directly to the contrary. Plaintiff has seen fit to quote the substance of the deposition in his brief, which we re-quote, as follows:

"Q. All right, state your name, please sir?

A. David Markowitz."

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. You just turn the whole operation over to him?

A. I do.

Q. You didn't know that he was carrying a pistol back and forth &ast; &ast; &ast;

A. No I didn't.

Q. &ast; &ast; &ast; in his car?

A. No.

Q. Would it have made any difference to you if you had known?

A. Absolutely not."

The foregoing is not susceptible of interpretation that Markowitz authorized the shooting by retroactively refusing to disapprove Yeoham's practice of carrying a pistol in his automobile, nor in any sense does it

amount to ratification of Yeoham's act in firing the shot.

In reality we have accorded plaintiff gratuitous treatment of point two. The case was not submitted on the theory plaintiff now advances. The jury had no authority to return a verdict against defendant Markowitz except that defined and delegated to them by the court's instructions. The verdict directing instruction requested by and given on behalf of plaintiff authorized the jury to find against Markowitz *solely* on the basis of their belief "that the defendant Carl J. Yeoham was so acting in the ordinary course of the business of the Sunnyside Tavern partnership." The instruction contains no hypothesis of recovery against Markowitz on the basis of the jury's belief that Yeoham was acting "with the authority" of his copartner Markowitz. If the jury had returned a verdict in plaintiff's favor on that ground it would have usurped the function of the court. Certainly the trial court would not have erred by setting aside a judgment rendered pursuant to a verdict of that nature.

Although there is a paucity of reported cases involving the question of partnership liability for a tortious shooting of another person by one of the partners, we have found one case directly in point with the instant case. In Idom v. Weeks & Russel, 135 Miss. 65, 99 So. 761, 40 A.L.R. 668, a two member partnership was engaged in the retail drug business. Pursuant to information that recent local burglaries had been committed and that suspicious characters were in town, one of the partners, together with companions, and without the knowledge of the copartner, secreted himself in the store after hours in the nighttime for the claimed purpose of apprehending burglars. While so concealed, an innocent person was mistaken for a burglar and was shot and killed by the partner. On appeal from a directed verdict and judgment for both defendant partners, the court held that a submissible case had been made against the partner who shot and killed plaintiff and reversed as to him. The judgment in favor of the absent copartner was affirmed on the ground that it was shown by the evidence that the partner doing the shooting was not in the store for the purpose of trying to protect the property of the firm, but was there for the dominant purpose of trying to apprehend and capture the burglars, and that, consequently, the alleged wrongful act was not within the scope of the partnership business.

Inasmuch as plaintiff has not satisfied his burden in this appeal to establish that error was committed by the trial court in the respects alleged, we conclude that the judgment entered by that court in favor of defendant Markowitz was a proper one and should not be disturbed.

In accordance with all the foregoing, we reverse that portion of the judgment which was rendered in favor of plaintiff and against defendant Yeoham, affirm that portion thereof which provides that plaintiff take nothing from defendant Markowitz, and remand the cause for a new trial on plaintiff's claim for relief as against defendant Yeoham.

All concur.